IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YORK DAILY RECORD, | : | Case No. |
| THE YORK DISPATCH, | : | |
| THE PHILADELPHIA INQUIRER | : | |
| d/b/a/ SPOTLIGHT PA, | : | |
| LNP MEDIA GROUP, INC., and | : | |
| WITF, | : | *Electronically filed* |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | |
| | : | COMPLAINT |
| DANIEL J. BYRNES, in his official | : | |
| capacity as Clerk of Court for | : | |
| York County, Pennsylvania, | : | |
|     Defendant. | : | 42 U.S.C. § 1983 |
| | : | PRELIMINARY AND |
| | : | PERMANENT INJUNCTIVE |
| | : | RELIEF REQUESTED |

**COMPLAINT ALLEGING VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983 AND SEEKING DECLARATORY AND INJUNCTIVE RELIEF**

Paula Knudsen Burke
PA Attorney ID: 87607
   *Counsel of Record*
Sasha Dudding**
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
PO Box 1328
Lancaster, PA 17608
(717) 370-6884
pknudsen@rcfp.org
  ** *Pro hac vice* admission forthcoming
*Counsel for Plaintiffs*

1

1.     The American system of justice is founded on principles of openness and transparency.  Contemporaneous access to criminal case files ensures that the public learns about important cases while they are still newsworthy, promotes accuracy in reporting, safeguards the fairness and legitimacy of criminal proceedings, and fosters meaningful public debate about—and greater understanding of—the criminal justice system.  Indeed, for these reasons, the First Amendment guarantees the public a presumptive right of access to criminal trials and associated records—a right rooted in the need to ensure that society's "constitutionally protected 'discussion of governmental affairs' is an informed one." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604–05 (1982).

2.     The Pennsylvania Constitution, like the U.S. Constitution, guarantees a presumptive right of access to court proceedings and court records.  *See* Pa. Const. art. I, § 11 ("All courts shall be open[.]"); *Miller v. Cnty. of Centre*, 173 A.3d 1162, 1167 (Pa. 2017); *Commonwealth v. Upshur*, 924 A.2d 642, 655 (Pa. 2007) (recognizing the "constitutional presumption of openness of courts"); *PA Childcare LLC v. Flood*, 887 A.2d 309, 312 (Pa. Super. Ct. 2005); *In re M.B.*, 819 A.2d 59, 61 (Pa. Super. Ct. 2003) ("This constitutional provision has been referred to as a 'mandate' for open and public trials . . . and has been applied in both civil and criminal cases[.]"); *Hutchison v. Luddy*, 581 A.2d 578, 582 (Pa. Super. Ct. 1990), *rev'd in part on other grounds*, 594 A.2d 307 (Pa. 1991).  Parties seeking closure

2

bear the burden of overcoming the presumption of openness.  *See Upshur*, 924 A.2d at 651.

3.     In York County, Pennsylvania, the public's presumptive constitutional right of access to judicial records in criminal cases is routinely violated.  Recently implemented policies and practices of Defendant, the York County Clerk of Courts (hereinafter, the "Clerk of Courts"), are preventing the press and public from obtaining timely and complete access to judicial documents.  Staff within the Clerk of Courts office routinely redact non-confidential information from judicial records without judicial or statutory authorization to do so, and without ensuring that such redactions are narrowly tailored, and routinely delay or deny access to judicial records.

4.     For example, during a three-week period in September 2021, journalists employed by Plaintiffs requested access to 42 criminal case records from the Clerk of Courts office but received access to only 14 percent of those records on the same day they made their request.  Access to 71 percent of the records they requested was delayed up to two days.  For another 14 percent of records, the Clerk of Courts office denied access entirely.  Once provided, 76 percent of records were redacted, often to obscure non-confidential information, and in many instances redacted by Defendant's office rather than the parties or court.  Such data is consistent with Plaintiffs' ongoing experiences requesting records from Defendant's office.  The

policies and practices of the Clerk of Courts are the direct cause of these delays and denials, which infringe upon the public's presumptive right of access to criminal case files in violation of the First Amendment and Pennsylvania Constitution.

5.     Plaintiffs the York Daily Record, The York Dispatch, The Philadelphia Inquirer d/b/a Spotlight PA ("Spotlight PA"), LNP Media Group, Inc., and WITF (collectively, "Plaintiffs"), bring this action to remedy the denial of their rights to access judicial records under the U.S. and Pennsylvania Constitutions.  Plaintiffs, by and through their undersigned attorneys, allege the following in support of their complaint for declaratory and injunctive relief against Defendant Daniel J. Byrnes in his official capacity as Clerk of Courts for York County, Pennsylvania.

## PARTIES

6.     Plaintiff the York Daily Record ("YDR") is a publication whose ultimate parent company is Gannett Co., Inc., the largest U.S. newspaper publisher by total daily circulation.  YDR's Daily Record/Sunday News publishes a daily print edition as well as an e-edition at ydr.com.

7.     Plaintiff The York Dispatch (the "Dispatch") was founded in 1876 by Hiram Young.  It is the longest continuously published newspaper in York County. A longtime evening publication, the Dispatch is now published weekday mornings by The York Dispatch Publishing Co. The news outlet also publishes online at yorkdispatch.com.

8.     YDR and the Dispatch share a principal place of business, located at 1891 Loucks Road, York, York County, Pennsylvania, and are within the jurisdiction of the Middle District.

9.     The Philadelphia Inquirer d/b/a Spotlight PA ("Spotlight PA") is an independent, non-partisan collaborative newsroom dedicated to producing investigative journalism for all of Pennsylvania.  Spotlight PA is an unincorporated project operating under the 501(c)(3) status of the Lenfest Institute for Journalism, which is the nonprofit owner of The Philadelphia Inquirer.  Spotlight PA combines the strengths of The Philadelphia Inquirer in partnership with PennLive/The Patriot-News, TribLIVE/Pittsburgh Tribune Review, and WITF Public Media.  Spotlight PA investigative journalism appears in news outlets in dozens of communities throughout Pennsylvania, including York County.  The news outlet also posts its work online at spotlightpa.org.  Spotlight PA's principal place of business is 225 Market Street, Suite 502A, Harrisburg, Dauphin County, Pennsylvania, and is within the jurisdiction of the Middle District.

10.    LNP Media Group, Inc. ("LNP") operates several award-winning publications and digital platforms, including LNP LancasterOnline, the company's flagship daily newspaper and digital property, Lancaster Farming, The Ephrata Review, The Lititz Record Express, and The Caucus, a publication dedicated to coverage of government and politics in Pennsylvania.  The principal place of

business for LNP publication The Caucus is 211 State Street, Harrisburg, Dauphin County, Pennsylvania, and is within the jurisdiction of the Middle District, while the principal place of business for LNP is 101 N. Queen Street, Lancaster, Lancaster County, Pennsylvania, which is within the Eastern District.

11.     WITF broadcast services reach audiences in central Pennsylvania.  The company comprises public broadcasting stations WITF TV, WITF 89.5 & 93.3, witf.org, WITF Educational Services, and Media Solutions.  WITF's principal place of business is 4801 Lindle Road, Harrisburg, Dauphin County, Pennsylvania, and is within the jurisdiction of the Middle District.

12.     Plaintiffs rely on public access to judicial records to provide news coverage to the York County community and beyond.  Reporters working for Plaintiffs regularly seek to review judicial records maintained by the York County Clerk of Courts.

13.     Defendant Daniel J. Byrnes is the elected Clerk of Courts for York County, Pennsylvania, with an official office located within the York County Judicial Center in York, Pennsylvania.  He is sued in his official capacity only.

14.     Defendant oversees maintenance of and access to all judicial records filed in criminal cases before the York County Court of Common Pleas, the jurisdiction's trial court.  Defendant's office maintains a record of docketing and

events associated with approximately 8,000 to 9,000 criminal cases per year, according to its website.[1]

15.     All parties except for LNP are based in the Middle District of Pennsylvania.

## NATURE OF ACTION

16.     This civil action seeks preliminary and permanent injunctive relief from violations of the First Amendment, actionable under 42 U.S.C. § 1983, and the Pennsylvania Constitution, and further seeks attorney's fees under 42 U.S.C. § 1988. Plaintiffs also seek declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

## JURISDICTION

17.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367.

## VENUE

18.     The claims made in this action arise from events that have occurred or will occur within this judicial district, and venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

---

[1]     *About Us: Clerk of Courts*, York Cnty., https://yorkcountypa.gov/courts-criminal-justice/court-courtrelated-offices/clerk-of-courts/about-us-clerk-of-courts.html   (last accessed Mar. 2022).

# FACTS

**A.**     **Plaintiffs have a First Amendment right to access judicial records filed in criminal cases.**

19.     The First Amendment guarantees the press and the public a qualified right of access to criminal proceedings. *Globe Newspaper Co.*, 457 U.S. at 602–03 (criminal trials); *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 505 (1984) (*voir dire* proceedings); *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 13 (1986) (preliminary hearings); *United States v. Smith*, 123 F.3d 140, 146 (3d Cir. 1997) ("The First Amendment right of access to criminal proceedings is firmly established.").

20.     The public's First Amendment right of access encompasses not only criminal trials and "other aspects of criminal proceedings such as voir dire," but also "'the records and briefs that are associated with those proceedings.'" *United States v. Thomas*, 905 F.3d 276, 281 (3d Cir. 2018) (quoting *Smith*, 123 F.3d at 146).

21.     The First Amendment right of access is a right of contemporaneous access. *See United States v. Wecht*, 537 F.3d 222, 229 (3d Cir. 2008) ("[T]he value of the right of access would be seriously undermined if it could not be contemporaneous."); *see also Doe v. Pub. Citizen*, 749 F.3d 246, 272 (4th Cir. 2014) ("[T]he public and press generally have a contemporaneous right of access to court documents and proceedings when the right applies.") (discussing First Amendment right of access); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir.

2006) (finding a "presumption of *immediate* public access attaches under . . . the First Amendment" (emphasis added)); *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) ("In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous." (citing *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976))); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1310 (7th Cir. 1984). And courts have held that "even a one to two day delay" to access judicial records "impermissibly burdens the First Amendment." *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989); *see also Ctr. for Investigative Reporting v. Se. Pa. Transp. Auth.*, 975 F.3d 300, 317 (3d Cir. 2020) ("'[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))); *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 328 (4th Cir. 2021) (defining "'contemporaneous'" as same-day or next-day access); *Grove Fresh Distribs., Inc.*, 24 F.3d at 897 ("[E]ach passing day may constitute a separate and cognizable infringement of the First Amendment." (quoting *Nebraska Press Ass'n*, 423 U.S. at 1329)); *Courthouse News Serv. v. N.M. Admin. Off. of Courts*, No. 21-CV-710 (JB) (LF), 2021 WL 4710644, at *1 (D.N.M. Oct. 8, 2021) (First Amendment requires state courts to provide access to civil complaints within five business hours of filing); *Courthouse News Serv. v. Jackson*, No. 09-CV-1844 (MH),

2009 WL 2163609, at *4 (S.D. Tex. July 20, 2009) (24-to-72-hour access delay for civil complaints unconstitutional).

22.    When the constitutional presumption of access attaches to a judicial record, any restrictions on press and public access must be made by the trial court—not an administrative office—based on "individualized, specific, particularized findings on the record that closure is essential to preserve higher values and is narrowly tailored to that interest." *Commonwealth v. Curley*, 189 A.3d 467, 473 (Pa. Super. Ct. 2018) (citing *United States v. Antar*, 38 F.3d 1348, 1359 (3d Cir. 1994)).  These requirements apply to redactions of judicial records.  Redactions restrict access to presumptively public records, so they must be narrowly tailored to advance a compelling state interest and based on specific findings.  *See, e.g.*, *Thomas*, 905 F.3d at 285 (requiring redactions to be "justified and narrowly tailored in a manner that does not impinge upon the public's right of access"); *McCowan v. City of Philadelphia*, No. 19-CV-3326 (KSM), 2021 WL 3737204, at *4 (E.D. Pa. Aug. 24, 2021) (requiring redactions to "satisfy strict scrutiny . . . [t]o overcome the First Amendment hurdle").

**B.    Plaintiffs have the right under the Pennsylvania Constitution to access judicial records filed in criminal cases.**

23.    The Pennsylvania Constitution, like the U.S. Constitution, guarantees a presumptive right of access to the courts.  *See* Pa. Const. art. I, § 11 ("All courts shall be open[.]"); *see also* Pa. Const. art. I, § 7 ("The printing press shall be free to every

10

person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the right thereof."); *Commonwealth v. Contakos*, 453 A.2d 578, 580 (Pa. 1982); *Upshur*, 924 A.2d at 655; *In re M.B.*, 819 A.2d at 61 ("This constitutional provision has been referred to as a 'mandate' for open and public trials . . . and has been applied in both civil and criminal cases[.]"); *Storms ex rel. Storms v. O'Malley*, 779 A.2d 548, 568 (Pa. Super. Ct. 2001) ("In Pennsylvania, the common law, the first amendment to the United States Constitution, and the Pennsylvania Constitution, all support the principle of openness." (citation omitted)).

24.    The presumption of openness extends to judicial records.  *See Miller*, 173 A.3d at 1167 ("[T]his principle of openness with respect to public judicial records is  .  .  .  grounded in the Pennsylvania Constitution."); *Commonwealth v. French*, 611 A.2d 175, 180 n.12 (Pa. 1992) ("Public trials include public records."). Judicial records include records filed with the court.  *See Miller*, 173 A.3d at 1167 (citing *Commonwealth v. Long*, 922 A.2d 892, 898 (Pa. 2007)).

25.    Parties seeking closure bear the burden of overcoming the presumption of openness.  *See, e.g.*, *Commonwealth v. Fenstermaker*, 530 A.2d 414, 418 (Pa. 1987).  Closure must be supported by on-the-record findings from the trial court that the denial of public access serves a compelling government interest and there are no

less restrictive means to serve that interest.  *See, e.g.*, *Long*, 922 A.2d at 905; *PA ChildCare LLC*, 887 A.2d at 312; *In re M.B.*, 819 A.2d at 64.

26.    In recognition of this constitutional right to access court proceedings and records, and "guided at all times by the long-standing tradition of access to court records and the important interests it serves," Pennsylvania courts adopted the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania (the "UJS Policy").    *See*   47   Pa.   Bull.   291   (Jan.   21,   2017), http://www.pacodeandbulletin.gov/Display/pabull?file=/secure/pabulletin/data/vol47/47-3/95.html.

27.    Section 5.0(A) of the UJS Policy provides that courts and records custodians "shall fulfill a request for access to case records as promptly as possible under the circumstances existing at the time of the request."[2]  If access is delayed or denied, Section 5.0(B) provides that the records custodian shall inform the requester of the specific reasons for that delay or denial.

28.    To obtain copies of criminal court records, UJS Policy Section 6.0 sets a cost limit of $0.25 per page for copies made by duplication.  It "does not authorize fees for viewing records that are stored at the court facility."

---

[2]    *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania*, Unified Jud.   Sys.   Pa.,   https://www.pacourts.us/Storage/media/pdfs/20211230/165101-publicrecordspolicy2022.pdf (last accessed Mar. 2022).

29.    As to confidentiality, UJS Policy Section 7.0 provides that parties shall not include six narrowly circumscribed types of information deemed confidential, such as Social Security numbers, in a court filing, and instead provide such information, if necessary, on a separate Confidential Information Form.

30.    Parties and their attorneys in Pennsylvania are solely responsible for complying with the confidentiality policy; the Clerk of Courts has no role in redacting confidential information.  If a filed record does not comply with UJS Policy Section 7.0, the policy authorizes the court, not the Clerk of Courts, to bring the filing into compliance by redacting, sealing, or amending it, and to impose monetary sanctions on filers.  The policy specifies that a party's noncompliance "shall not affect access to case records that are otherwise accessible."

**C.    Defendant is unconstitutionally redacting and delaying or denying access to criminal court records in York County.**

31.    In 2006, the office of the York County Clerk of Courts began electronically imaging all judicial records filed with the court.  Public computer terminals equipped with Laserfiche, the electronic imaging program, were installed on the first floor of the county courthouse.  On them, users could read— instantaneously and without a fee—judicial records filed with the court.

32.    In or around late 2019 or early 2020, the last public computer terminal was removed.  At that time, Plaintiffs and the public were still able to access and

review judicial records at no cost via Laserfiche-equipped public computer terminals located on the fourth floor of the courthouse.

33.     On February 10, 2021, Defendant notified several York County reporters and editors employed by some of the Plaintiffs that his office would start charging them for copies of records as of March 1, 2021.  In response to a question about the policy change, Defendant replied on February 11, 2021 that his office would charge the same amount for electronic and paper copies, and further stated: "We will not be putting a computer in our lobby."

34.     As of March 1, 2021, the 2019–21 fee schedule for the York County Clerk of Courts set a rate of $0.65 per page for paper copies of judicial records, despite the statewide UJS Policy setting a $0.25 per-page limit, and a flat rate of $17.00 for electronic copies, described as a "CD-ROM fee."  A true and correct copy of the fee schedule is attached hereto as **Exhibit A**.

35.     On March 31, 2021, the Pennsylvania NewsMedia Association ("PNA") and the Reporters Committee for Freedom of the Press ("RCFP") requested that Defendant lower York County judicial records fees to bring them in line with the UJS Policy and avoid creating financial barriers to access.  A true and correct copy of that request is attached hereto as **Exhibit B** (the "PNA/RCFP Letter").

36.     Shortly thereafter, in April 2021, Defendant disabled the Laserfiche software on the fourth-floor public courthouse computers.  As a result, members of

the press and public could no longer view judicial records electronically on any computer maintained by Defendant.

37.    Instead, on information and belief, Defendant directed his office staff to personally handle reporters' and others' requests to access judicial records.  In or around that time, Defendant's office initiated a policy and practice of delaying access to judicial records while staff members reviewed and redacted requested documents—despite the fact that UJS Policy authorizes only the parties and the court to redact confidential information.  Defendant's policy and practice has resulted in frequent redaction of information that is not designated as "confidential" under UJS Policy.

38.    On April 22, 2021, Defendant replied to the PNA/RCFP letter, stating that he had updated the copying costs to $0.25 per page and had removed the $17.00 CD-ROM fee.  Defendant stated that he "still ha[d] work to do in order to create a mechanism so that your client can view any public documents at no charge while protecting privileged information."  A true and correct copy of Defendant's April 22, 2021 response letter is attached hereto as **Exhibit C**.

39.    By letter dated April 23, 2021, PNA and RCFP responded, acknowledging Defendant's changes and drawing attention to continuing concerns, including the removal of public computers for viewing judicial records electronically and the Clerk of Courts office's admitted practice of redacting judicial records in

violation of constitutional access rights and the UJS Policy. A true and correct copy of the April 23, 2021 response from PNA and RCFP is attached hereto as **Exhibit D**.

40. Following additional conversations between Defendant, PNA, and RCFP, on May 12, 2021, Defendant outlined two ways by which a reporter and the public could access judicial records without a fee, including (a) reviewing original judicial records accessible at "the front counter in the Clerk of Courts office"; and (b) emailing a request for electronic copies of judicial records to the Clerk of Courts office. Defendant further stated that there would be no fee for reviewing judicial records in the Clerk of Courts office; that for physical copies a requester would be charged according to the published fee schedule; and that for emailed documents, "there will be no fee." Defendant did not respond to the concerns regarding redactions. A true and correct copy of the May 12, 2021 response from Defendant is attached hereto as **Exhibit E**.

41. If Defendant and his office had complied with those representations, if Defendant's office had ceased making unauthorized redactions to judicial records, Plaintiffs would have been able to exercise their constitutionally protected right to timely access the judicial records maintained by Defendant's office.

42. Instead, Defendant's office has continued to make improper, extrajudicial redactions to judicial records requested by Plaintiffs and has continued

to deny Plaintiffs and the public the contemporaneous access to judicial records they are entitled to under the U.S. and Pennsylvania Constitutions.  Such redactions and denials of access have occurred regardless of whether the records are requested in person or via email.

43.     For example, between September 7 and 30, 2021, reporters employed by Plaintiffs requested 42 judicial records from the Clerk of Courts office.  They received only six records on the same day as the request.  For 13 records, reporters waited one day; access to 17 records was delayed by two days.  The Clerk of Courts office denied access to six records.  The majority—32 of 42—of records were redacted.  ***Just one*** record was received on the same day it was requested without redactions.  *See* Declarations of Brandon Addeo, **Exhibit F**; Teresa Boeckel, **Exhibit G**; Ed Mahon, **Exhibit H**; Jack Panyard, **Exhibit I**; Dylan Segelbaum, **Exhibit J**.

i.      ***Defendant oversees a policy and practice of redacting and "impounding" judicial records without having any legal authority to do so.***

44.     Defendant and employees of his office regularly redact judicial records without having the authority to do so, and despite the fact that no court has ordered it, before restricting access.

45.     These redactions are made without regard to narrow tailoring, and go far beyond the sharply limited category of confidential information as defined by the

UJS Policy.  For example, publicly available information, such as names of adult non-parties, is frequently redacted.

46.    Defendant's liberal use of extrajudicial redactions does not comport with the U.S. and Pennsylvania Constitutions, nor the UJS Policy.  These redactions are frequently made by employees in Defendant's office even though the UJS Policy provides only a role for the parties and the court in redacting judicial records.

47.    Further, Defendant's office also marks cases as "impounded" and denies all requests for access to judicial records associated with those cases, from scheduling orders to complaints.  This practice is neither authorized by law nor narrowly tailored.

48.    Defendant's office "impounds" cases without any court order or judicial authorization.  On the UJS Portal, which provides online access to docket sheets (but not judicial records) in the Pennsylvania courts, dockets of "impounded" cases do not contain any sealing orders from the court.  Instead, docket entries marking cases as "impounded" are filed by "Byrnes, Daniel," whereas court orders are filed by the "Court of Common Pleas - York County."

49.    No other statute or rule authorizes Defendant's extrajudicial practice of "impounding" cases.  The Pennsylvania Code's references to "impounding" largely involve land and physical property.  *See, e.g.*, 7 Pa. Code § 21.4; 52 Pa. Code §

1055.32; 52 Pa. Code § 30.61.  The only reference to "impounding" judicial records applies in the Orphans' Court.  231 Pa. Code Rule 15.7(a).

50.    On information and belief, the "impounded" designation is unique to Defendant's office.  Cases marked as "impounded" typically involve sexual or physical offenses against minors. Although Defendant's office claims to have adopted this practice pursuant to 42 Pa. C.S. § 5988, that statute only makes confidential "the name of the minor victim."  Yet rather than redacting the minor's name, Defendant's office denies access entirely.  *See* Declaration of Hurubie Meko, **Exhibit K**, ¶¶ 6–8, 13–15, 17–20; Segelbaum Decl. ¶¶ 42–45.

51.    For example, on February 9, 2022, reporter Hurubie Meko requested to view the affidavit of probable cause and complaint in *Commonwealth v. Rivera* (CP-67-CR-0000424-2021), which involved the prostitution of a minor.  Bonnie Marier, the Clerk of Courts office's juvenile and front-counter manager, replied on February 23, writing the case "is IMPOUNDED" and denying access.  When Meko asked what "impounded" meant, Marier replied, "not available to the public" and "[t]his comes as an Order from the Judge."  Yet the docket for that case does not contain any judicial sealing orders; rather, it contains an entry titled "Impounded" filed by

"Byrnes, Daniel" on February 10, 2021.  *See* UJS Portal, Case No. CP-67-CR-0000424-2021.[3]  *See* Meko Decl. ¶¶ 2, 6–8.

52.    On Monday, December 20, 2021, York Dispatch reporter Aimee Ambrose went to the Clerk of Courts office to view the affidavit of probable cause and criminal complaint in *Commonwealth v. Fink* (CP-67-CR-0002449-2021), involving a shooting at a residence.  A staff member in Defendant's office denied Ambrose same-day access to the records because Marier was out of the office that day and purportedly had to review the records before allowing access.  Ambrose received the records from Marier via email two days later, on December 22.  They contained numerous redactions, including redactions to the names of the owner of the residence and vehicle shot at, the defendant's co-conspirators, witnesses, and the defendant's father, as well as the addresses for the residence shot at, the defendant, and the defendant's father.  Such redactions are contrary to the UJS Policy and were evidently made to the records by Defendant's office.  *See* Declaration of Aimee Ambrose, **Exhibit L**, ¶¶ 11–18, Ex. D.

53.    Also on December 22, 2021, Ambrose emailed Marier to request the affidavit and criminal complaint of a defendant who pleaded guilty in a child molestation case, *Commonwealth v. Stone* (CP-67-CR-0002228-2020).   Marier

---

[3]      *Available at* https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-67-CR-0000424-2021&dnh=X24IOWDFa0H5zfN7zbPooA%3D%3D (last accessed Mar. 2022).

replied to Ambrose that day, saying "This case is Impounded."  Ambrose has since been unable to access any files in that case.  *See id.* ¶¶ 19–20, Ex. E.  The docket sheet shows that Defendant "impounded" the case on June 11, 2020, and does not show any sealing orders from the court.  *See* UJS Portal, Case No. CP-67-CR-0002228-2020.[4]

54.    On December 14, 2021, YDR reporter Dylan Segelbaum requested via email the criminal complaints, affidavits of probable cause, and informations filed in three cases, and received them that afternoon.  In one of the cases, *Commonwealth v. Rinehart* (CP-67-CR-0004651-2021), the name of the adult victim of an alleged property damage crime was redacted from the criminal complaint and affidavit of probable cause (but not the information) by Defendant's office.  This is contrary to the UJS Policy.  In another inconsistency, the address of the damaged business appears to be redacted once in the complaint, but not elsewhere in the same document.  *See* Segelbaum Decl. ¶ 47.

55.    On December 10, 2021, YDR reporter Jack Panyard went to the Clerk of Courts office to review the criminal complaints, affidavits of probable cause, and informations in *Commonwealth v. Cosek* (CP-67-CR-0003226-2021, CP-67-CR-0003227-2021, and CP-67-CR-0003549-2021).   Defendant's front desk staff

---

[4]    *Available at* https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-67-CR-0002228-2020&dnh=LfIUhb7eCGP%2FRqqXijADHw%3D%3D (last accessed Mar. 2022).

member told Panyard she could not provide access until the following week because she first had to review the files to see whether any information needed to be redacted or edited.  He received the records via email on December 13.  They contained numerous redactions, including to the victim's name and the defendant's address and date of birth.  Meanwhile, a bank account number used by the defendant was not redacted, though it is confidential under UJS Policy.  *See* Panyard Decl. ¶¶ 2–11.

56.     On September 28, 2021, Dispatch reporter Brandon Addeo visited the Clerk of Courts office to review a motion for a new trial in *Commonwealth v. Ames* (CP-67-CR-0005889-2019).  He was told that Clerk of Courts office staff needed to "review" the document prior to giving him access to it.  More than an hour later, Addeo was provided a copy of the eight-page document with the names of a doctor and nurse redacted from the record.  Such redactions are in contravention of the UJS Policy and, on information and belief, the Clerk of Courts did not follow any of the required procedures before restricting access to this information.  *See* Addeo Decl. ¶¶ 3–5.

57.     Rachel McDevitt, a reporter for WITF, received requested records via email four days after contacting Defendant's office on June 14, 2021.  The name of the adult victim of an alleged trespassing by a U.S. Census worker was redacted from the records by Defendant's office, even though there was no compelling or

lawful reason for obscuring this information, which had already been published in news articles.  *See* Declaration of Rachel McDevitt, **Exhibit M**, ¶¶ 3–10.

58.    On October 21, 2021, Segelbaum requested access via email to the criminal complaint, affidavit of probable cause, and information in *Commonwealth v. Nieves* (CP-67-CR-0005124-2020), which involved charges of aggravated assault against a minor, along with three other cases.  On October 25, 2021, Marier emailed Segelbaum and said the "Case is Impounded," denying access to the requested records.  *See* Segelbaum Decl. ¶ 42.  Segelbaum was also denied access to another "impounded" case on October 29, 2021.  *Id.* ¶ 43.  The docket sheets show that the Clerk of Courts, not a judge, "impounded" the cases.  *Id.* ¶¶ 42–43 & nn.7–8.

59.    On June 1, 2021, Segelbaum went to Defendant's office and requested to review the criminal complaint and affidavit of probable cause in *Commonwealth v. Schalizki* (CP-67-CR-0006374-2019), before attending a sentencing hearing in the case, which was scheduled to occur approximately 45 minutes later in the courthouse.  A Clerk of Courts employee printed out and handed Segelbaum copies of the complaint and the first page of the affidavit of probable cause.  When Segelbaum asked for the remaining pages, he was told he could not access them until staff had reviewed them for possible redactions.  A supervisor in Defendant's office told Segelbaum she would not be able to do this until the following morning.  Segelbaum told her he was there to report on the hearing and needed access to the

record before the approaching deadline for an article he was writing about the case, but she repeated that he could not view it that day.  *See* Segelbaum Decl. ¶¶ 22–29.

## ii.   *Defendant delays and denies access to records requested in person.*

60.     In addition to, and in part because of, Defendant's unlawful policy and practice of redacting and impounding judicial records, Defendant's office has delayed or denied access when Plaintiffs requested to view judicial records in person.

61.     As noted, Ambrose was denied same-day access to records requested in person on December 20, 2021 because Marier, a Clerk of Courts employee tasked with reviewing judicial records for redactions, was out of the office that day, leading to a two-day delay in access.  *See* Ambrose Decl. ¶¶ 11–18, Ex. D.  Similarly, when Ambrose requested records in person on December 10, 2021, she received them via email one business day later, on December 13.   The email chain contained a conversation between Marier and another Clerk of Courts employee, Jane Melhorn, in which Melhorn asked Marier to "please check" her redactions to the judicial records.   After Marier said "Looks good," Melhorn forwarded those records to Ambrose.  *Id.* ¶¶ 4–9, Exs. A, B.

62.     On September 10, 2021, Panyard went to the Clerk of Courts office to review the complaint, information, and hearing transcripts in *Commonwealth v. Gibson* (CP-67-CR-0001513-2019).   Defendant's front desk staff member told

Panyard that the Clerk of Courts office no longer kept paper records and denied him access to the records in electronic form.  Despite the office's wholesale withholding of the requested records, they have not been sealed; a search on the UJS Portal, which provides public access to docket sheets but not individual records, shows that the case remains unsealed, so access should be available.  *See* Panyard Decl. ¶¶ 12–17.

63.    On December 10, 2021, YDR editor Scott Fisher requested to review records in person at the Clerk of Courts office but was only able to access them after paying $13.25 for copies, despite informing Defendant's office that he only wanted to review the documents in person, and even though Defendant's putative access policy provided that electronic documents could be provided via email at no cost. He experienced the same problem when requesting to review records on May 19, 2021.  *See* Declaration of Scott Fisher, **Exhibit N**, ¶¶ 3–15.

iii.    *Defendant delays and denies access to records requested via email.*

64.    In other cases, Plaintiffs requested electronic copies of judicial records by emailing the address provided by Defendant.  They, too, experienced delays and denials of access.

65.    On September 9, 2021, Segelbaum emailed the address provided by Defendant seeking electronic copies of the juror list and various exhibits filed in *Commonwealth v. Ray* (CP-67-CR-0007541-2019 and CP-67-CR-0007545-2019). He did not receive them that day and sent a follow-up email on September 10, 2021

to Marier.  Marier asserted that the juror list was not public and denied Segelbaum access.  *See* Segelbaum Decl. ¶ 41.  Both the Third Circuit and Pennsylvania Supreme Court have recognized a First Amendment right of access to jurors' names. *See Wecht*, 537 F.3d at 239; *Long*, 922 A.2d at 905.

66.     On May 28, 2021, LNP reporter Dan Nephin requested electronic copies of judicial records via email and did not receive a reply until four business days later, whereupon he was informed that he would have to pay a fee for electronic copies.  After Nephin questioned those charges, he was told he would receive the records at no cost, but never did.  *See* Declaration of Dan Nephin, **Exhibit O**, ¶¶ 2– 9.

67.     The unconstitutional redactions and denials of contemporaneous access detailed above are reflective of numerous similar incidents experienced by Plaintiffs over the past year in York County.  Defendant's policies and customs, which deny Plaintiffs the ability to access criminal court records without improper redactions and in a contemporaneous manner, violate Plaintiffs' right of access to judicial records under the U.S. and Pennsylvania Constitutions.

## COUNT I
### (Declaratory Relief)
### <u>Defendant's policy and custom of redacting and impounding judicial records violates the First Amendment to the U.S. Constitution and Article I, § 11 of the Pennsylvania Constitution</u>

68.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1–67 hereinabove.

69.     Members of the press and public, including Plaintiffs, have a qualified right under the First Amendment to the U.S. Constitution and Article I, § 11 of the Pennsylvania Constitution to inspect judicial records in criminal matters, including those filed with Defendant the York County Clerk of Courts.

70.     Plaintiffs seek a declaration pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that, by acting under color of state law to implement a policy and custom of redacting public information from judicial records without authority, without narrowly tailoring such redactions to serve compelling governmental interests, and without following any procedures before restricting access to that information, Defendant violates the right of access to judicial records under the First Amendment and the Pennsylvania Constitution.

71.     By acting and threatening to act under color of state law to deprive Plaintiffs of constitutional rights, Defendant has violated and continues to violate Plaintiffs' rights, actionable under 42 U.S.C. § 1983.

72.     Plaintiffs have no adequate remedy available at law.

## COUNT II
### (Declaratory Relief)
### <u>Defendant's policy and custom of delaying and denying access to judicial records violates the First Amendment to the U.S. Constitution and Article I, § 11 of the Pennsylvania Constitution</u>

73.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1–72 hereinabove.

74.     Members of the press and public, including Plaintiffs, have a qualified right under the First Amendment to the U.S. Constitution and Article I, § 11 of the Pennsylvania Constitution to contemporaneously inspect judicial records in criminal matters, including those filed with the York County Clerk of Courts.

75.     Plaintiffs seek a declaration pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that, by delaying and denying access to records under color of state law, Defendant violates the right of access to judicial records under the First Amendment and Pennsylvania Constitution.

76.     By acting and threatening to act under color of state law to deprive Plaintiffs of constitutional rights, Defendant has violated and continues to violate Plaintiffs' rights, actionable under 42 U.S.C. § 1983.

77.     Plaintiffs have no adequate remedy available at law.

**COUNT III**
**(Preliminary Injunctive Relief)**
**Defendant's policy and custom of redacting and impounding judicial records violates the First Amendment to the U.S. Constitution and Article I, § 11 of the Pennsylvania Constitution**

78.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1–77 hereinabove.

79.     In the performance of his duties, under color of state law, Defendant has denied and delayed access to, and continues to deny and delay access to, judicial records by implementing a policy and custom of redacting records without authority or any basis under law.  Such redactions are not narrowly tailored to further a compelling governmental interest and are not uniformly applied.

80.     In doing so, Defendant has violated, and continues to violate, Plaintiffs' First Amendment rights and the rights guaranteed to Plaintiffs by Article I, § 11 of the Pennsylvania Constitution.

81.     This deprivation of Plaintiffs' constitutional rights causes Plaintiffs to suffer immediate, irreparable harm.  *Elrod*, 427 U.S. at 373.

82.     No adequate remedy exists at law for the immediate, irreparable harm Defendant's acts have caused and are causing Plaintiffs.  A preliminary injunction against Defendant's unconstitutional redactions, which result in denials of access, would not cause greater harm to Defendant and is in the public interest.  Plaintiffs are therefore entitled to preliminary injunctive relief.  *See, e.g.*, *Child Evangelism*

*Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004)

(Alito, J.); *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 157 (3d

Cir. 2002).

## COUNT IV
### (Preliminary Injunctive Relief)
### Defendant's policy and custom of delaying and denying access to judicial records violates the First Amendment to the U.S. Constitution and Article I, § 11 of the Pennsylvania Constitution

83.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1–82 hereinabove.

84.    In the performance of his duties, under color of state law, Defendant has implemented a policy and custom of denying and delaying access to judicial records.

85.    In doing so, Defendant has violated, and continues to violate, Plaintiffs' First Amendment rights and the rights guaranteed to Plaintiffs by Article I, § 11 of the Pennsylvania Constitution.

86.    This deprivation of Plaintiffs' constitutional rights causes Plaintiffs to suffer immediate, irreparable harm. *Elrod*, 427 U.S. at 373.

87.    No adequate remedy exists at law for the immediate, irreparable harm Defendant's acts have caused and are causing Plaintiffs. A preliminary injunction against Defendant's unconstitutional denials of access would not cause greater harm to Defendant and is in the public interest. Plaintiffs are therefore entitled to

preliminary injunctive relief. *See, e.g.*, *Child Evangelism Fellowship of N.J. Inc.*, 386 F.3d at 524; *Tenafly Eruv Ass'n, Inc.*, 309 F.3d at 157.

## COUNT V
### (Permanent Injunctive Relief)
### <u>Defendant's policy and custom of redacting and impounding judicial records violates the First Amendment to the U.S. Constitution and Article I, § 11 of the Pennsylvania Constitution</u>

88.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1–87 hereinabove.

89.     Upon information and belief, unless otherwise enjoined by this Court, Defendant will, under color of state law, continue to carry out the policy and custom of unconstitutionally redacting judicial records maintained by his office, resulting in denials of access.

90.     By doing so, Defendant will continue to violate Plaintiffs' First Amendment rights and the rights guaranteed to Plaintiffs by Article I, § 11 of the Pennsylvania Constitution.

91.     No adequate remedy exists at law for the ongoing irreparable harm Defendant's actions will cause Plaintiffs.

92.     Any purported hardships faced by Defendant in providing constitutionally required access to criminal court records are insufficient to justify infringement on Plaintiffs' First Amendment rights.

93.     Plaintiffs are therefore entitled to permanent injunctive relief.  *See, e.g.*, *Ctr. for Investigative Reporting*, 975 F.3d at 317; *Pa. Pro. Liab. Joint Underwriting Ass'n v. Wolf*, 509 F. Supp. 3d 212, 235 (M.D. Pa. 2020); *Stilp v. Contino*, 743 F. Supp. 2d 460, 466–71 (M.D. Pa. 2010).

## COUNT VI
### (Permanent Injunctive Relief)
### <u>Defendant's policy and custom of delaying and denying access to judicial records violates the First Amendment to the U.S. Constitution and Article I, § 11 of the Pennsylvania Constitution</u>

94.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1–93 hereinabove.

95.     Upon information and belief, unless otherwise enjoined by this Court, Defendant will, under color of state law, continue to delay and deny access to judicial records.

96.     By doing so, Defendant will continue to violate Plaintiffs' First Amendment rights and the rights guaranteed to Plaintiffs by Article I, § 11 of the Pennsylvania Constitution.

97.     No adequate remedy exists at law for the ongoing irreparable harm Defendant's actions will cause Plaintiffs.

98.     Any purported hardships faced by Defendant in providing constitutionally required access to criminal court records are insufficient to justify infringement on Plaintiffs' First Amendment rights.

99.     Plaintiffs are therefore entitled to permanent injunctive relief. *See, e.g.*, *Ctr. for Investigative Reporting*, 975 F.3d at 317; *Pa. Pro. Liab. Joint Underwriting Ass'n*, 509 F. Supp. 3d at 235; *Stilp*, 743 F. Supp. 2d at 466–71.

## **PRAYER FOR RELIEF**

WHEREFORE, upon all allegations and counts alleged herein, Plaintiffs respectfully ask that this Court:

A.     preliminarily and permanently enjoin Defendant, in his official capacity, including his agents, assistants, successors, employees, and all persons acting in concert or cooperation with him, or at his direction or under his control, from continuing his policies and practices resulting in delayed, costly, and improperly restricted access to judicial records;

B.     issue judgment pursuant to 28 U.S.C. § 2201 declaring Defendant's policies and practices that cause delays in and denials of access to criminal court records violate Plaintiffs' constitutional right of access to judicial records under the U.S. and Pennsylvania Constitutions;

C.     issue an award of costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

D.     grant such other relief as the Court deems just and proper.

Dated: March 11, 2022

Respectfully submitted,

By /s/ Paula Knudsen Burke

Paula Knudsen Burke
Sasha Dudding**
REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
PO Box 1328
Lancaster, PA 17608
(717) 370-6884
pknudsen@rcfp.org
   ** *Pro hac vice* admission forthcoming
*Counsel for Plaintiffs*