IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YORK DAILY RECORD, | : | Case No. 1:22-cv-361-SHR |
| THE YORK DISPATCH, | : | |
| THE PHILADELPHIA INQUIRER | : | |
| d/b/a SPOTLIGHT PA, | : | |
| LNP MEDIA GROUP, INC., and | : | |
| WITF, | : | *Electronically filed* |
|     Plaintiffs, | : | |
| | : | |
|        v. | : | |
| | : | |
| DANIEL J. BYRNES, in his official | : | |
| capacity as Clerk of Court for | : | |
| York County, Pennsylvania, | : | |
|     Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR A PRELIMINARY INJUNCTION**

Paula Knudsen Burke
PA Attorney ID: 87607
Sasha Dudding**
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
PO Box 1328
Lancaster, PA 17608
(717) 370-6884
pknudsen@rcfp.org
  ** *Pro hac vice* admission forthcoming
*Counsel for Plaintiffs*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ iii

FACTUAL BACKGROUND ............................................................................ 2

QUESTION PRESENTED ............................................................................... 9

ARGUMENT ................................................................................................... 9

    I.   Plaintiffs Are Substantially Likely to Succeed on the Merits of Their
        Claims. ............................................................................................. 10

    II.  Plaintiffs Will Suffer Irreparable Harm if a Preliminary Injunction Is
        Not Granted. ..................................................................................... 17

    III. The Balance of the Equities and Public Interest Favor a Preliminary
        Injunction. ........................................................................................ 18

CONCLUSION ............................................................................................... 20

CERTIFICATE OF WORD COUNT COMPLIANCE ........................................ 22

CERTIFICATE OF CONCURRENCE/NON-CONCURRENCE......................... 23

CERTIFICATE OF SERVICE ........................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Am. C.L. Union v. Ashcroft*,
   322 F.3d 240 (3d Cir. 2003)............................................................... 18

*Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*,
   513 F. Supp. 3d 593 (W.D. Pa. 2021).................................................. 20

*Associated Press v. U.S. District Court*,
   705 F.2d 1143 (9th Cir. 1983)........................................................ 13, 14

*Buck v. Stankovic*,
   485 F. Supp. 2d 576 (M.D. Pa. 2007) ................................................. 19

*Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist.*,
   386 F.3d 514 (3d Cir. 2004)................................................................... 9

*Commonwealth v. Contakos*,
   453 A.2d 578 (Pa. 1982) ...................................................................... 11

*Commonwealth v. Fenstermaker*,
   530 A.2d 414 (Pa. 1987) ...................................................................... 13

*Courthouse News Serv. v. Gabel*,
   No. 21-CV-132 (CR), 2021 WL 5416650 (D. Vt. Nov. 19, 2021)......... 13, 16, 17

*Courthouse News Serv. v. Jackson*,
   No. 09-CV-1844 (MH), 2009 WL 2163609
   (S.D. Tex. July 20, 2009) ............................................................ 13, 14, 17, 18

*Courthouse News Serv. v. N.M. Admin. Off. of Cts.*,
   No. 21-CV-710 (JB), 2021 WL 4710644 (D.N.M. Oct. 8, 2021)............... *passim*

*Courthouse News Serv. v. Schaefer*,
   2 F.4th 318 (4th Cir. 2021) .................................................................. 12

*Courthouse News Serv. v. Tingling*,
   No. 16-CV-8742 (ER), 2016 WL 8739010 (S.D.N.Y. Dec. 16, 2016).............. 17

*Ctr. for Investigative Reporting v. Se. Pa. Transp. Auth.*,
   975 F.3d 300 (3d Cir. 2020).................................................................. 19

*Dunmore Sch. Dist. v. Pa. Interscholastic Athletic Ass'n*,
   505 F. Supp. 3d 447 (M.D. Pa. 2020) .................................................... 9

*Elrod v. Burns*,
   427 U.S. 347 (1976) ........................................................................ 10, 17

*Globe Newspaper Co. v. Pokaski*,
   868 F.2d 497 (1st Cir. 1989) ............................................................ 12, 14

*Globe Newspaper Co. v. Superior Court*,
   457 U.S. 596 (1982) ............................................................................ 11

*Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*,
   24 F.3d 893 (7th Cir. 1994) ................................................................ 12

*KOS Pharms., Inc. v. Andrx Corp.*,
   369 F.3d 700 (3d Cir. 2004) ................................................................. 9

*McCormack v. Twp. of Clinton*,
   872 F. Supp. 1320 (D.N.J. 1994) .......................................................... 20

*Miller v. Cnty. of Centre*,
   173 A.3d 1162 (Pa. 2017) .............................................................. 11, 14

*Nebraska Press Ass'n v. Stuart*,
   423 U.S. 1327 (1975) ........................................................................... 12

*Nebraska Press Ass'n v. Stuart*,
   427 U.S. 539 (1976) ...................................................................... 11, 12

*Phila. Inquirer v. Wetzel*,
   906 F. Supp. 2d 362 (M.D. Pa. 2012) .............................. 17, 18, 19, 20

*Pomicter v. Luzerne Cnty. Convention Ctr. Auth. & SMG*,
   No. 16-CV-632 (RDM), 2016 WL 1706165 (M.D. Pa. Apr. 27, 2016) ....... 19, 20

*Press-Enter. Co. v. Superior Court*,
   478 U.S. 1 (1986) .......................................................................... 11, 13

*Richmond Newspapers, Inc. v. Virginia*,
   448 U.S. 555 (1980) ...................................................................... 11, 12

*Stilp v. Contino*,
   613 F.3d 405 (3d Cir. 2010) ................................................................ 10

*Stilp v. Contino*,
   629 F. Supp. 2d 449 (M.D. Pa. 2009) ................................................... 20

*Swartzwelder v. McNeilly*,
   297 F.3d 228 (3d Cir. 2002) ................................................................ 17

*Temple Univ. v. White*,
    941 F.2d 201 (3d Cir. 1991)................................................................ 20

*United States v. Antar*,
    38 F.3d 1348 (3d Cir. 1994)............................................................... 13

*United States v. Simone*,
    14 F.3d 833 (3d Cir. 1994)................................................................. 13

*United States v. Smith*,
    123 F.3d 140 (3d Cir. 1997)........................................................ 11, 14

*United States v. Thomas*,
    905 F.3d 276 (3d Cir. 2018)............................................ 1, 11, 13, 14

*United States v. Wecht*,
    537 F.3d 222 (3d Cir. 2008)............................................. 1, 12, 13, 14

**Statutes**

42 Pa. C.S. § 2756 ............................................................................... 10

42 Pa. C.S. § 5988 ................................................................................. 4

42 Pa. C.S. §§ 2751–2757 ................................................................... 10

42 U.S.C. § 1983 ................................................................................. 10

**Constitutional Provisions**

Pa. Const. art. I, § 11 ......................................................................... 11

Pa. Const. art. IX, § 4 ......................................................................... 10

**Other Authorities**

*About Us*, York Cnty.,
    https://yorkcountypa.gov/courts-criminal-justice/court-courtrelated-
    offices/clerk-of-courts/about-us-clerk-of-courts.html (last accessed Mar.
    2022) ................................................................................................. 10

Case Records Public Access Policy of the Unified Judicial System of
    Pennsylvania,
    https://www.pacourts.us/Storage/
    media/pdfs/20211230/165101-publicrecordspolicy2022.pdf (last accessed
    Mar. 2022).............................................................................. 4, 15, 16

*CourtView*, Butler Cnty.,
    https://pa.butlercountyclerk.org/eservices (last accessed Mar. 2022)................. 16

*WebIA*, Centre Cnty.,
    https://webia.centrecountypa.gov (last accessed Mar. 2022)............................. 16

**Rules**

Fed. R. Civ. P. 65(a) ................................................................................................. 2

The First Amendment and the Pennsylvania Constitution guarantee the press and public a presumptive right of access to judicial records filed in criminal cases. This right of access is critical to ensuring the public is informed about issues such as community safety and the workings of law enforcement and the courts. Where the constitutional access right attaches, it is a right of contemporaneous access. *See United States v. Wecht*, 537 F.3d 222, 229 (3d Cir. 2008). Restrictions on access to judicial records—including redactions, delays, and denials of access—must be narrowly tailored to advance a compelling state interest and must be based on specific findings. *See, e.g.*, *United States v. Thomas*, 905 F.3d 276, 285 (3d Cir. 2018).

Plaintiffs the York Daily Record ("YDR"), The York Dispatch, The Philadelphia Inquirer d/b/a Spotlight PA ("Spotlight PA"), LNP Media Group, Inc. ("LNP"), and WITF (collectively, "Plaintiffs") are media organizations located in Pennsylvania that report on York County, including its criminal cases. As an essential part of their newsgathering, Plaintiffs rely on access to judicial records. Yet over the past year, policies and practices adopted by Defendant Daniel J. Byrnes in his capacity as York County Clerk of Courts have resulted in repeated and ongoing denials of access. Until last year, Plaintiffs had immediate, no-cost access to judicial records via public computer terminals at the county courthouse. Now, the terminals have been removed and Byrnes has instead purportedly

1

adopted an access policy that requires records requests to be made in person at the Clerk of Courts office or via email.  Under both methods, Plaintiffs frequently experience multi-day delays in accessing documents, or access is denied, without any basis in law.  Defendant's office also has a practice of arbitrarily redacting and "impounding" (effectively, sealing) judicial records, despite lacking authority to do so.  These policies and practices prevent Plaintiffs from timely publishing newsworthy information, and violate the constitutional requirement that access restrictions be narrowly tailored to advance a compelling state interest and that the determination be made by a court.

Plaintiffs bring this § 1983 action against Byrnes in his official capacity as Clerk of Courts to vindicate their access rights under the First Amendment and the Pennsylvania Constitution.  Plaintiffs move for the entry of a preliminary injunction, pursuant to Fed. R. Civ. P. 65(a), enjoining Defendant from delaying access to judicial records maintained by his office beyond one business day, redacting non-confidential information in judicial records, and "impounding" judicial records without a court order.

## FACTUAL BACKGROUND

Plaintiffs are five Pennsylvania-based media organizations that report on York County, including on criminal cases in the York County Court of Common Pleas, the jurisdiction's trial court.  Compl. ¶¶ 6–12.  As part of their

newsgathering work, Plaintiffs rely on comprehensive and contemporaneous access to judicial records.  *Id.* ¶ 12; Declaration of Dylan Segelbaum, Compl. Ex. J, ¶¶ 2–3; Declaration of Aimee Ambrose, Compl. Ex. L, ¶¶ 2–3; Declaration of Brandon Addeo, Compl. Ex. F, ¶ 2.  These records inform Plaintiffs' reporting on topics such as public safety, law enforcement accountability, the judicial system, and more.  When judicial records are arbitrarily redacted and access is delayed or denied, Plaintiffs face barriers to timely publishing newsworthy information.

Records associated with all York County Court of Common Pleas cases are maintained by the York County Clerk of Courts office.  Compl. ¶ 14.  As the elected York County Clerk of Courts, Defendant oversees that office.  *Id.* ¶¶ 13–14.  From 2006 until spring 2021, the public could access judicial records filed in the York County Court of Common Pleas by using public computer terminals at the county courthouse.  *Id.* ¶¶ 31–32.  The terminals allowed users to immediately read such records, at no cost, on a software program called Laserfiche.  *Id.*  By April 2021, all terminals in the courthouse had been either removed by Defendant or had their Laserfiche software disabled.  *Id.* ¶¶ 32, 36.  Since then, Plaintiffs and the public have been unable to independently obtain contemporaneous access to judicial records in York County Court of Common Pleas cases.  *Id.* ¶ 36.

Plaintiffs have been facing additional access restrictions: Defendant's office redacts non-confidential information from judicial records or marks them as

"impounded" and denies access entirely, without legal justification. *Id.* ¶¶ 37, 44–50.  These redactions occur even though the statewide Case Records Public Access Policy of the Unified Judicial System of Pennsylvania (the "UJS Policy")—which is grounded in the constitutional and common law rights of access—provides that parties and their attorneys are solely responsible for redacting confidential information.  *See* UJS Policy § 7.0(D), https://www.pacourts.us/Storage/media/pdfs/20211230/165101-publicrecordspolicy2022.pdf (last accessed Mar. 2022).  The policy gives Clerks of Courts, such as Defendant, no role in redactions.  The policy also limits redactions to six categories of "confidential information," such as Social Security Numbers.  *Id.* § 7.0(A).  Yet Defendant's office consistently redacts non-confidential information in judicial records.  Moreover, Defendant regularly "impounds" cases involving physical and sexual offenses against minors, sealing them without a court order or any other legal authority.  Once Defendant has impounded a case, his office denies requests for access to any records in those cases.  Although Defendant has purportedly adopted this practice to comply with 42 Pa. C.S. § 5988, that statute provides solely that "the name of the minor victim" of physical or sexual abuse shall be confidential.  Yet rather than redacting the name and providing access to the rest of the records, Defendant's office denies access entirely.  As discussed below, these procedurally improper

4

redaction and "impounding" policies are not narrowly tailored or tied to a compelling state interest, violating Plaintiffs' constitutional rights of access.

Prior to instituting litigation, counsel for Plaintiffs, along with the Pennsylvania NewsMedia Association, sought to work with Defendant to implement a constitutionally adequate access policy.  Compl. ¶¶ 35–39.  They explained the fixes needed, including ending the practice of redacting non-confidential information, providing contemporaneous access, and lowering copying costs.  *See id*. ¶¶ 35–39, Exs. B, D.  In his first response, via email on April 22, 2021, Defendant said he had lowered copying costs but "still ha[d] work to do in order to create a mechanism so that your client can view any public documents at no charge while protecting privileged information."  *Id.* at Ex. C. Following continued discussions, on May 12, 2021, Defendant sent an email offering two methods of accessing judicial records maintained by his office: (1) requesting to review the records in person at the Clerk of Courts office; or (2) sending the request to a designated email address.  *Id.* at Ex. E.  Defendant added that there would be no fee for reviewing records and that for physical copies, reporters would be charged according to the published fee schedule.  *Id*.  He did not respond to the redaction-related concerns.  *Id.*

In the ensuing months, Defendant's office has continued its practice of redacting non-confidential information from judicial records or "impounding"

those records, and has delayed and denied Plaintiffs access to judicial records requested in person and via email.  *Id.* ¶¶ 41–67.  These problems are likely interrelated: Defendant has improperly tasked his office with redacting requested records, which delays access.  Indeed, from September 7 to 30, 2021, reporters employed by Plaintiffs requested 42 judicial records from Defendant's office.  *Id.* ¶ 43.  Of those, they received just six records on the same day as the request, received 13 records one day later, received 17 after two days, and were denied access to six.  *Id.*  Just one record was received on the day requested and without redactions.  *Id.*  This data is consistent with the access delays and denials Plaintiffs have faced due to Defendant's policies and practices throughout the past year.

First, Defendant's office frequently, and improperly, redacts non-confidential information from judicial records before fulfilling Plaintiffs' access requests—or denies access entirely.  For example, when YDR reporter Jack Panyard requested judicial records on December 10, 2021, Defendant's staff told him he would have to wait up to a week while staff assessed whether the records "need[ed] to be redacted or edited."  Declaration of Jack Panyard, Compl. Ex. I, ¶¶ 1–9.  In a record requested by YDR reporter Dylan Segelbaum, Defendant redacted Facebook's Georgia office location.  *See* Segelbaum Decl., ¶ 34, Ex. D.  In another case Segelbaum was reporting on, Defendant's office redacted an adult victim's name in two requested records, but not in a third.  *Id.* ¶ 47; *see also id.* ¶¶ 31–32;

6

Ambrose Decl. ¶¶ 4–9, 21; Declaration of Rachel McDevitt, Compl. Ex. M, ¶ 10; Addeo Decl. ¶¶ 3–5. Reporters have also been denied access to requested records in cases marked by Defendant as "impounded," without any further explanation or court order. *See* Segelbaum Decl. ¶¶ 42–45; Ambrose Decl. ¶¶ 19–20, Ex. E; Declaration of Hurubie Meko, Compl. Ex. K, ¶¶ 6–8, 13–15, 17–20.

Second, Plaintiffs have faced delays and improper fees when requesting records in person, despite Defendant's purported policy of allowing individuals to review records in person at the front desk of the Clerk of Courts office in a timely, no-fee manner. For example, York Dispatch reporter Aimee Ambrose experienced a two-day access delay because Bonnie Marier, a Clerk of Courts employee tasked with approving redactions, was out of the office when Ambrose requested judicial records in person. When Ambrose received the records, they bore numerous improper redactions, including to the names of adult non-parties. *See* Ambrose Decl. ¶¶ 11–18, Exs. C–D. Ambrose also experienced a one-day access delay when an employee asked Marier to "please check" requested records. Only after Marier approved did Ambrose receive them, again with improper redactions. *Id.* ¶¶ 4–9, Exs. A, B; *see also* Segelbaum Decl. ¶¶ 22–29.

On May 19 and December 10, 2021, Defendant's staff required YDR editor Scott Fisher to pay the per-page fee to review records in person, even though Fisher made clear that he did not want physical copies. *See* Declaration of Scott

Fisher, Compl. Ex. N.  Similarly, on May 13, 2021, YDR reporter Jasmine Vaughn-Hall was told she would have to pay the per-page fee to review records at Defendant's office.  *See* Declaration of Jasmine Vaughn-Hall, Ex. A.  Fellow YDR reporter Samantha Ruland had a similar experience at Defendant's office on May 15, 2021, and left after being told she would have to pay to view requested records, in contravention of Defendant's purported access policy.  *See* Declaration of Samantha Ruland, Ex. B.

Third, Plaintiffs have faced delays and denials of access when requesting records via email.  For example, on May 28, 2021, LNP reporter Dan Nephin requested judicial records via email, but never received them despite inquiring several times.  *See* Declaration of Dan Nephin**,** Compl. Ex. O.  YDR reporter Teresa Boeckel waited two days to receive records she requested by email on September 22, 2021, as did Spotlight PA reporter Colin Deppen with records he requested via email on June 1, 2021.  *See* Declaration of Teresa Boeckel, Compl. Ex. G; Declaration of Colin Deppen, Ex. C; *see also* Segelbaum Decl. ¶¶ 19–21; Ambrose Decl. ¶¶ 19–20.  And the struggle to access documents lodged at the Clerk of Courts office is not limited to reporters.  *See* Declaration of Peter Jacobs, Ex. D.  Overall, Defendant's ongoing access denials have harmed Plaintiffs' newsgathering work, hindering their ability to inform the public, and violated their constitutional rights.

8

## QUESTION PRESENTED

Whether the Court should preliminarily enjoin Defendant Daniel J. Byrnes, in his official capacity as York County Clerk of Courts, from delaying access to judicial records maintained by his office beyond one business day, redacting non-confidential information in judicial records, and "impounding" cases before the York County Court of Common Pleas.

Suggested answer: Yes.

## ARGUMENT

Entry of a preliminary injunction is warranted where the moving parties demonstrate "'(1) a likelihood of success on the merits; (2) that [they] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.'" *Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004) (Alito, J.) (quoting *KOS Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). On the first factor, when the requested injunction would require the nonmoving party to take "some positive act," the moving party must "show a substantial likelihood of success on the merits and that their right to relief is indisputably clear." *Dunmore Sch. Dist. v. Pa. Interscholastic Athletic Ass'n*, 505 F. Supp. 3d 447, 456 (M.D. Pa. 2020) (citation omitted). Where an action claims First Amendment violations,

9

courts "focus [their] attention on the first factor" because "injunctive relief [is] 'clearly appropriate' where 'First Amendment interests were either threatened or in fact being impaired at the time relief was sought.'" *Stilp v. Contino*, 613 F.3d 405, 409 & n.4 (3d Cir. 2010) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

I.    **Plaintiffs Are Substantially Likely to Succeed on the Merits of Their Claims.**

To succeed on the merits of their claims, Plaintiffs must show that Defendant, acting under color of law, has violated their constitutional rights. *See* 42 U.S.C. § 1983. Defendant's policies and practices of 1) pervasively redacting non-confidential information from judicial records and categorically "impounding" judicial records; and 2) delaying or denying access to judicial records violate Plaintiffs' rights under the First Amendment, actionable under § 1983, and the Pennsylvania Constitution.

First, Defendant is a person acting under color of law. As the duly elected York County Clerk of Courts, he is a government actor. *See* Pa. Const. art. IX, § 4; 42 Pa. C.S. §§ 2751–2757. Defendant has carried out and failed to remedy the ongoing access restrictions at issue pursuant to his role leading the "office [that] is responsible for all of the criminal court records for the York County Court of Common Pleas." *About Us*, York Cnty., https://yorkcountypa.gov/courts-criminal-justice/court-courtrelated-offices/clerk-of-courts/about-us-clerk-of-courts.html (last accessed Mar. 2022); *see also* 42 Pa. C.S. § 2756(a)(1) (requiring records in

criminal matters to be filed with the Clerk of Courts).  Plaintiffs seek prospective

equitable relief from Defendant in his official capacity as Clerk of Courts, in order

to end ongoing violations of their constitutional rights caused by Defendant and the

office he directs.  *See* Compl. ¶¶ 68–99.

Next, Defendant has violated Plaintiffs' constitutional rights.  The First

Amendment to the U.S. Constitution and Article I, section 11 of the Pennsylvania

Constitution guarantee the press and the public a presumptive right of access to

criminal court proceedings and judicial records associated with those proceedings.

*See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 602–03 (1982); *Press-

Enter. Co. v. Superior Court*, 478 U.S. 1, 13 (1986); *United States v. Smith*, 123

F.3d 140, 146 (3d Cir. 1997); *Thomas*, 905 F.3d at 281; *Miller v. Cnty. of Centre*,

173 A.3d 1162, 1167 (Pa. 2017); *Commonwealth v. Contakos*, 453 A.2d 578, 579–

80 (Pa. 1982); Pa. Const. art. I, § 11 ("All courts shall be open[.]").  This openness

"has long been recognized as an indispensable attribute" of our justice system.

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980).  Judicial

records "may be the necessary predicate for a movement to reform police methods,

pass regulatory statutes, or remove judges who do not adequately oversee law

enforcement activity," or "may be necessary to calm community fears that [a]

perpetrator is still at large"—all core First Amendment values.  *Nebraska Press

Ass'n v. Stuart*, 427 U.S. 539, 606 (1976) (Brennan, J., concurring).  The press

plays a key role in facilitating this public oversight and discourse, since "[w]hile media representatives enjoy the same right of access as the public," they often "function[] as surrogates for the public" by reporting on court proceedings and judicial records. *Richmond Newspapers*, 448 U.S. at 573.

Where the First Amendment right of access applies, it must be contemporaneous; otherwise "the value of the right of access would be seriously undermined." *Wecht*, 537 F.3d at 229.  Delay may "destroy the contemporary news value of the information the press seeks to disseminate." *Nebraska Press Ass'n*, 427 U.S. at 609.  Courts have held that delays beyond even five business hours violate the constitutional guarantee of contemporaneous access to judicial records. *See Courthouse News Serv. v. N.M. Admin. Off. of Cts.*, No. 21-CV-710 (JB), 2021 WL 4710644, at *1 (D.N.M. Oct. 8, 2021);[1] *see also Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 328 (4th Cir. 2021) (defining "'contemporaneous'" as same-day or next-day access (citation omitted)); *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) ("'[E]ach passing day may constitute a separate and cognizable infringement of the First Amendment.'" (quoting *Nebraska Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975))); *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989) ("[E]ven a one to two

---

[1]     A copy of all unpublished opinions cited herein is attached as Exhibit E, pursuant to Local Rule 7.8(a).

day delay impermissibly burdens the First Amendment . . . ."); *Associated Press v. U.S. District Court*, 705 F.2d 1143, 1147 (9th Cir. 1983) (finding 48-hour delays unconstitutional as "total restraint on the public's first amendment right of access even though the restraint is limited in time").

To overcome the constitutional right of access, the proponent of closure must show that closure is narrowly tailored—that is, the least restrictive alternative—to serve a compelling state interest. *See Press-Enter. Co.*, 478 U.S. at 13–14; *United States v. Antar*, 38 F.3d 1348, 1358–59 (3d Cir. 1994); *Commonwealth v. Fenstermaker*, 530 A.2d 414, 418 (Pa. 1987). Procedurally, closure must be supported by "specific, individualized findings articulated on the [trial court] record *before* closure is effected." *Antar*, 38 F.3d at 1359. This standard applies across all types of closures, including delays, denials, and redactions of presumptively public records. *See, e.g.*, *Thomas*, 905 F.3d at 285 (redactions); *Wecht*, 537 F.3d at 229 (delays); *United States v. Simone*, 14 F.3d 833, 842 (3d Cir. 1994) (denials); *Courthouse News Serv. v. Gabel*, No. 21-CV-132 (CR), 2021 WL 5416650, at *13 (D. Vt. Nov. 19, 2021) (delays); *Courthouse News Serv. v. Jackson*, No. 09-CV-1844 (MH), 2009 WL 2163609, at *4 (S.D. Tex. July 20, 2009) (delays).

Applying this standard, the presumption of contemporaneous access under the First Amendment and Pennsylvania Constitution indisputably attaches to the

13

records at issue, which are judicial records filed in criminal cases.  *See Smith*, 123

F.3d at 146; *Miller*, 173 A.3d at 1167.  Yet Defendant's policies and practices have

rendered Plaintiffs unable to reliably access those records on a timely basis and

without improper redactions or denials.  As noted above, of just the 42 records

requested from Defendant's office between September 7 and 30, 2021, access to 36

was delayed beyond one business day or denied.  Thirty-two records were

redacted, ostensibly by Defendant's office.  Only one record was received on the

day requested and without redactions.  That data reflects Plaintiffs' experiences

over the past year.  The pervasive delays, denials, redactions, and "impounding"

experienced by Plaintiffs implicate constitutional access guarantees and require

Defendant to show this diminished access is narrowly tailored to meet a

compelling government interest.  *See Thomas*, 905 F.3d at 285; *Wecht*, 537 F.3d at

229; *Pokaski*, 868 F.2d at 507; *Associated Press*, 705 F.2d at 1147; *Jackson*, 2009

WL 2163609, at *4.

     Defendant cannot meet this burden.  As to the redaction and "impounding"

of judicial records, no court was involved, there is no compelling state interest in

redacting non-confidential information or categorically sealing whole cases, and

the practice is not narrowly tailored.  As noted, Defendant's office frequently

redacts information falling far outside the UJS Policy's narrow definition of

"confidential information."  *See* Segelbaum Decl. ¶¶ 31–38, 44–45, Ex. D;

Ambrose Decl. ¶¶ 9, 17–18, 21, Exs. B, D, F; McDevitt Decl. ¶ 10; Addeo Decl.;

UJS Policy § 7.0(A).  Rather than following the UJS Policy's directive that parties

and their attorneys are solely responsible for complying with the confidentiality

provisions, with errors corrected by the court, Defendant has improperly inserted

his office into this scheme.  *See* UJS Policy § 7.0(D)–(E).  Defendant has also

taken it upon himself to categorically "impound" cases, without a sealing order

from the court.  Although "impounded" cases may contain minor victims' names,

the wholesale withholding of all records, including scheduling orders, in such cases

is unauthorized and serves no compelling interest.  *See* Segelbaum Decl. ¶¶ 42–45;

Ambrose Decl. ¶¶ 19–20, Ex. E; Meko Decl. ¶¶ 6–8, 13–20.  These redaction and

"impounding" practices fail to overcome the presumption of access, and

impermissibly burden Plaintiffs' constitutional rights.

Moreover, Defendant can point to no compelling state interest in imposing

days-long waits to access requested judicial records.  The records are public, stored

electronically, and quickly retrievable.  As a reason for the delay, Defendant's staff

have cited their practice of reviewing requested records for confidential

information.  *See* Addeo Decl. ¶¶ 4–5; Segelbaum Decl. ¶ 26; Ambrose Decl. ¶¶ 8,

10, 13–16.  This does not satisfy Defendant's burden.  Hypothetical doubts about

whether parties and their counsel comply with the confidential information policy

cannot stand in the face of the U.S. and Pennsylvania Constitutions' clear

15

mandates for contemporaneous access.  Indeed, the UJS Policy, enacted with

constitutional access guarantees in mind, specifies that a party's noncompliance

"shall not affect access to case records that are otherwise accessible."  UJS Policy

§ 7.0(E).  As one court addressing access delays held, "[c]ourts cannot use an

unjustifiably lengthy bureaucratic process as an excuse to withhold access to" court

records "that should otherwise be made public in a timely manner" under the First

Amendment.  *N.M. Admin. Off. of Cts*., 2021 WL 4710644, at *40; *see also Gabel*,

2021 WL 5416650, at *16 (finding state courts' practice of having staff redact

complaints before allowing access was not narrowly tailored where confidentiality

policy placed burden of compliance on filers).  Additionally, the York County

Court of Common Pleas is not the only court navigating confidentiality concerns,

yet Defendant does not seem to have tried any of the methods other courts use to

provide timely public access to electronic judicial records.  *See, e.g.*, *CourtView*,

Butler Cnty., https://pa.butlercountyclerk.org/eservices (last accessed Mar. 2022);

*WebIA*, Centre Cnty., https://webia.centrecountypa.gov (last accessed Mar. 2022).

Defendant cannot, therefore, show that the delays and denials of access to

judicial records are the least restrictive method of serving a compelling state

interest.  Without such a showing, Defendant's access restrictions impermissibly

burden Plaintiffs' constitutional rights, and Plaintiffs are substantially likely to

succeed on the merits of their § 1983 claim.  It is for these same reasons that courts

addressing a similar issue—delays and denials of access to newly filed civil complaints—have found plaintiffs substantially likely to succeed on the merits of their § 1983 First Amendment claims and granted injunctions requiring same-day access. *See, e.g.*, *Gabel*, 2021 WL 5416650, at *18; *N.M. Admin. Off. of Cts*., 2021 WL 4710644, at *40; *Courthouse News Serv. v. Tingling*, No. 16-CV-8742 (ER), 2016 WL 8739010 (S.D.N.Y. Dec. 16, 2016); *Jackson*, 2009 WL 2163609, at *4. So, too, is injunctive relief warranted here.

## II. Plaintiffs Will Suffer Irreparable Harm if a Preliminary Injunction Is Not Granted.

Where an alleged deprivation of First Amendment rights has occurred, irreparable harm is presumed because, as the Supreme Court has recognized, "'[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Swartzwelder v. McNeilly*, 297 F.3d 228, 241 (3d Cir. 2002) (quoting *Elrod*, 427 U.S. at 373); *see also Phila. Inquirer v. Wetzel*, 906 F. Supp. 2d 362, 373 (M.D. Pa. 2012) (finding irreparable injury where plaintiffs were likely to succeed on merits of First Amendment access claim). Because Plaintiffs have demonstrated that they are substantially likely to establish that Defendant has violated their constitutional rights to contemporaneously access judicial records, the Court should presume Plaintiffs will face irreparable harm if it does not grant a preliminary injunction.

Even without this presumption, Plaintiffs satisfy the irreparable harm standard. Defendant's ongoing access denials cause Plaintiffs to forgo publishing newsworthy information contained in judicial records, harming their reporting. *See, e.g.*, Segelbaum Decl. ¶¶ 2–3, 22–29, 40 (describing how access delays hindered reporting); Ambrose Decl. ¶¶ 2–3, 15 (same); *cf. N.M. Admin. Off. of Cts.*, 2021 WL 4710644, at *43 (finding denial of timely access to complaints irreparably harmed plaintiff and granting preliminary injunction); *Jackson*, 2009 WL 2163609, at *4 (same). Each passing day that Plaintiffs' constitutional access rights are infringed constitutes irreparable harm, necessitating a grant of preliminary injunctive relief.

## III.   The Balance of the Equities and Public Interest Favor a Preliminary Injunction.

A party seeking a preliminary injunction "must also show that granting the preliminary injunction would not result in even greater harm to the non-moving party." *Wetzel*, 906 F. Supp. 2d at 374. Upholding Plaintiffs' constitutional access rights would not cause Defendant greater harm. "[T]he Government does not have 'an interest in the enforcement of an unconstitutional law'" or custom. *Am. C.L. Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003) (citation omitted). Further, Defendant's access policies and practices are not only unconstitutional; they also encumber his office by requiring staff to field access requests and review each record for redactions. Providing electronic access or requiring same-day responses

18

to access requests—facilitated by ending the practice of improperly impounding and redacting records—would not harm Defendant and would greatly benefit Plaintiffs and the public. *Cf. Pomicter v. Luzerne Cnty. Convention Ctr. Auth. & SMG*, No. 16-CV-632 (RDM), 2016 WL 1706165, at *7 (M.D. Pa. Apr. 27, 2016) (finding this factor supported plaintiffs whose "harm—the curtailment of their constitutional rights under the First Amendment—is real, irreparable, and substantial. In contrast, the harm to Defendants is speculative."). The balance of the hardships strongly tips in Plaintiffs' favor.

Finally, a preliminary injunction must be in the public interest. This prong, too, is easily met in cases alleging constitutional violations, since "'[i]t is always in the public interest to prevent the violation of a party's constitutional rights.'" *Buck v. Stankovic*, 485 F. Supp. 2d 576, 586–87 (M.D. Pa. 2007) (citation omitted); *see also Ctr. for Investigative Reporting v. Se. Pa. Transp. Auth.*, 975 F.3d 300, 317 (3d Cir. 2020) ("[T]he public interest does not suffer by enforcing the First Amendment's protection against restrictions" on access rights "that are incapable of reasoned application"); *Wetzel*, 906 F. Supp. 2d at 374. Indeed, requiring Defendant to comply with the constitutional presumption of access to judicial records would benefit the public, which relies on Plaintiffs' newsgathering to stay informed on public safety and community affairs. A constitutionally sound access policy will "contribute to the 'wide freedom in matters of adult public discourse'

guaranteed by the First Amendment," and promote public participation in and oversight of governmental processes. *Wetzel*, 906 F. Supp. 2d at 375 (citation omitted). An injunction would also help members of the public access judicial records themselves. Both the balance of the equities and the public interest strongly favor granting a preliminary injunction.[2]

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue a preliminary injunction enjoining Daniel J. Byrnes, in his official capacity as York County Clerk of Courts, from redacting non-confidential information from judicial records and delaying or denying access to judicial records, and directing him to make records accessible in a contemporaneous manner and without arbitrary "impounding" or redactions.

---

[2]     Additionally, Plaintiffs request that the Court waive any injunction bond or require only a nominal amount. Doing so is proper where plaintiffs seek a preliminary injunction to "enforce important federal rights or 'public interests,'" *Temple Univ. v. White*, 941 F.2d 201, 220 (3d Cir. 1991) (citation omitted), such as First Amendment rights, *see N.M. Admin. Off. of Cts.*, 2021 WL 4710644, at *44 (waiving bond); *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 513 F. Supp. 3d 593, 622 (W.D. Pa. 2021) ($100); *Pomicter*, 2016 WL 1706165, at *8 ($100); *Stilp v. Contino*, 629 F. Supp. 2d 449, 468 (M.D. Pa. 2009) ($250). Plaintiffs seek injunctive relief to vindicate their constitutional right to access judicial records, a significant federal right and public interest. Requiring a bond would create financial hardship for Plaintiffs; meanwhile, an injunction would not monetarily harm Defendant. *See McCormack v. Twp. of Clinton*, 872 F. Supp. 1320, 1328 (D.N.J. 1994) (finding these factors supported waiving bond).

Dated: March 15, 2022

Respectfully submitted,

By /s/ Paula Knudsen Burke
Paula Knudsen Burke
Sasha Dudding**
REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
PO Box 1328
Lancaster, PA 17608
(717) 370-6884
pknudsen@rcfp.org
   ** *Pro hac vice* admission forthcoming
*Counsel for Plaintiffs*

21

### CERTIFICATE OF WORD COUNT COMPLIANCE

I, Paula Knudsen Burke, Esq., certify that the foregoing brief complies with the word-count limit of Local Rule 7.8(b)(2) and contains 4,711 words.  In making this count, I have relied upon the word count feature of Microsoft Word, which was used to prepare this brief.

By /s/ Paula Knudsen Burke
Paula Knudsen Burke
Sasha Dudding**
REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
PO Box 1328
Lancaster, PA 17608
(717) 370-6884
pknudsen@rcfp.org
   ** *Pro hac vice* admission forthcoming

**CERTIFICATE OF CONCURRENCE/NON-CONCURRENCE**

I, Paula Knudsen Burke, Esq., certify that I requested Defendant's concurrence in Plaintiffs' Motion for Preliminary Injunction, pursuant to Local Rule 7.1.  Defendant, via email from his solicitor Stephen R. McDonald, stated that he does not concur.

By /s/ Paula Knudsen Burke
Paula Knudsen Burke
Sasha Dudding**
REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
PO Box 1328
Lancaster, PA 17608
(717) 370-6884
pknudsen@rcfp.org
   ** *Pro hac vice* admission forthcoming

23

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2022, I electronically filed this Motion for Preliminary Injunction, proposed order, memorandum, and accompanying exhibits on PACER, where they are accessible by all parties and their counsel, and served them on Defendant Daniel J. Byrnes and his solicitor Stephen R. McDonald via email.

By /s/ Paula Knudsen Burke
Paula Knudsen Burke
Sasha Dudding**
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
PO Box 1328
Lancaster, PA 17608
(717) 370-6884
pknudsen@rcfp.org
 ** *Pro hac vice* admission forthcoming