IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YORK DAILY RECORD<br>THE YORK DISPATCH,<br>THE PHILADELPHIA INQUIRER<br>d/b/a SPOTLIGHT PA,<br>LNP MEDIA GROUP, INC.,<br>and WITF<br>              Plaintiffs<br><br>v.<br><br>DANIEL J. BYRNES, in his official<br>Capacity as Clerk of Court for<br>York County, Pennsylvania<br>              Defendant | Case No. 1:22-cv-00361-SHR<br><br><br><br><br><br><br><br><br><br><br>42 U.S.C §1983<br>PRELIMINARY AND<br>PERMANENT INJUNCTIVE<br>RELIEF REQUESTED |

## **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Defendant, Daniel J. Byrnes, in his official capacity as Clerk of Court for York County, Pennsylvania, through his counsel, Stephen R. McDonald, Esquire and CGA Law Firm, hereby responds in Opposition to the Memorandum of Law in Support of Plaintiffs' Preliminary Injunction as follows:

1

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs, the York Daily Record ("YDR"), York Dispatch, The Philadelphia Inquirer d/b/a Spotlight PA ("Spotlight"), LNP Media Group, Inc. ("LNP") and WITF (collectively "Plaintiffs") initiated a lawsuit against Daniel J. Byrnes as the York County Clerk of Court ("Defendant"). Defendant and the York County Clerk of Court's Office staff have been attempting to meet the demands of the Plaintiffs for access to court records, while at the same time complying with the requirements set forth by various Commonwealth of Pennsylvania's statutes and policies regarding what access is allowed to the public. Plaintiffs filed their Motion for Preliminary Injunction essentially seeking to prohibit Defendant from complying with the Commonwealth's policies.

## II. QUESTIONS PRESENTED

Whether this Honorable Court should deny Plaintiffs Motion where any delay in access to certain records is attributable to Defendant's compliance Pennsylvania's laws and the Unified Judicial System's Public Access Policy?

**Suggested Answer:** Yes, the Court should deny Plaintiff's Motion which seeks to change the status quo and provide Plaintiffs access to records which have not been reviewed in compliance with Pennsylvania's laws.

## III. ARGUMENT

A preliminary injunction must only be granted in cases where the necessity is clearly established. It is an extraordinary and drastic remedy that should not be granted unless the movant is clearly persuasive. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). As such, the granting of preliminary injunctive relief is restricted to limited circumstances. Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989). In order to obtain a preliminary injunction, a plaintiff must establish four elements:

(1) the likelihood that the plaintiff will prevail on the merits at final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest. A.T. & T. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994) (internal citations omitted). For all the following reasons, the Plaintiffs fail to meet these threshold requirements and should not be granted an injunction.

### A. Plaintiffs Are Not Likely To Succeed on the Merits of Their Claim.

The Plaintiffs argue that Defendant has a policy and practice of "pervasively redacting non-confidential information from judicial records" and "delaying or

denying access to judicial records." (Plaintiffs *Motion for Preliminary Injunction*, P.9). This is simply not true and Plaintiffs would be unable to prove otherwise.

The Plaintiffs are essentially disgruntled by not having unfettered and immediate access to all records within the Clerk of Court's Office. The Plaintiffs routinely request dozens of cases a day and either misunderstand the law governing what information can or cannot be provided to the public or, if they understand, refuse to accept that the Defendant is required to adhere to the Commonwealth's law regarding access to such information. Access to court documents and information at the York County Clerk of Court Office is prohibited for a myriad of reasons. The Case Records Public Access Policy Of The Unified Judicial System Of Pennsylvania (the "Policy"), governs the dissemination of judicial records. The Policy is designed to provide access to certain court case documents while also protecting confidential information.

As defined in Section 1.0 of the Policy, Dan Byrnes, as the Clerk of the Court, is the "custodians" of the criminal and other records and "responsible for maintaining case records or for processing public requests for access to case records." Obviously, as custodian, the Defendant must comply this policy which includes the "security, possession, custody and control of case records." Id.

4

Section 2.0(B). In other words, the Defendant cannot provide information in files that is prohibited by the Policy. Section 9.0 prescribes the "Limits on Public Access to Case Records at a Court Facility". Under this section, in part, the following information shall not be accessible by the public at a court facility:

> C. Any Confidential Information Form [or any Unredacted Version of any document] as set forth in Section 7.0;
> D. Any document filed with a Confidential Document Form as set forth in Section 8.0;
> E. Information sealed or protected pursuant to court order;
> F. Information to which access is otherwise restricted by federal law, state law, or state court rule; and

The federal, state, and court rules which restrict access under (F) include Pennsylvania's Limited Access and the Clean Slate laws, and multiple prohibitions under the Rules of Criminal Procedure.

For example, the Clean Slate Law (18 Pa.C.S.A. §9122.2) went into effect in 2019. Under this Law, the Administrative Office of Pennsylvania Courts runs a monthly query of the court records to identify cases which are eligible to be sealed from public access. 18 Pa.C.S.A. §9122.2(b)(1). Cases eligible for clean slate include:

> 9122.2(a)
> (1) information pertaining to a conviction of a misdemeanor of the second degree, a misdemeanor of the third degree or a misdemeanor offense punishable by imprisonment of no more than two years if a person has been free for 10 years

5

from conviction for any offense punishable by imprisonment of one or more years and if completion of each court-ordered financial obligation of the sentence has occurred.

 (2) Criminal history record information pertaining to ***charges which resulted in a final disposition other than a conviction***. (emphasis added).

 (3) Criminal history record information pertaining to a conviction for a summary offense when 10 years have elapsed since entry of the judgment of conviction and completion of all court-ordered financial obligations of the sentence has occurred.

The list of cases meeting this criteria is then transmitted to the State Police who validate the eligible cases, and then the court of common pleas "shall provide limited access to the eligible records by removing the validated cases from public dockets." 18 Pa.C.S.A. §9122.2(b)(5). Based on the criteria of this law, *every charge, in every criminal case which does not result in conviction, is eligible for Clean Slate protections and should not be disseminated to the public.*

The practical result of this law is that, even if an individual is arrested and convicted of some of the offenses with which he/she is charged, any charges which do not result in conviction must be removed from records provided to the public. 9122.1(a)(2). What the Plaintiffs seem to fail to understand, or accept, is that most cases do not result in a conviction on every charge as the result of plea deals, not guilty verdicts, and other circumstances. Consequently the Defendant is required to ensure that this information is not disseminated, and the only way to do that is to

review files which are requested prior to turning them over. Given that this policy only went into effect in 2019, and also given the additional delays as a result of the Covid pandemic, there are many old files still under review either by the Pennsylvania State Police or the Clerk of Court Office, not to mention all the new cases are resolved every day.

A small sampling of some of the other laws under 9.0(F) prohibiting the distribution of information include:

a) Pa.R.C.P.M.D.J. No. 803: Complaints filed in magisterial district court shall designate minors names by their initials.
b) Pa.R.Crim.P. 212(A) – no public access to an unexecuted search warrant
c) Pa.R.Crim.P. 569. – sealed records of mental health experts
d) Pa.R.Crim.P. 703(A) – pre-sentence reports and any related psychiatric psychological reports
e) 42 Pa.C.S. § 5988. (a) in a prosecution involving a minor victim of sexual or physical abuse, the name of the minor victim shall not be disclosed by officers or employees of the court to the public, *and any records revealing the name of the minor victim shall not be open to public inspection.* (emphasis added).
(b) Penalty. Any person who violates this section commits a misdemeanor of the third degree

Notably, to undermine the seriousness with which the Commonwealth views the importance of protecting this information, this last law includes a provision making it a misdemeanor to provide the prohibited information. Moreover, the law does

not say the names should be redacted, it says "any records revealing the name of the minor victim *shall not be open to the public*" which Plaintiffs refuse to accept.

Every day the Clerk's Office receives records from all the MDJ offices in York County. While the Clerk, and usually attorneys, understand not to include information like a minor victims name, those criminal files received from the magistrate offices contain affidavits of probable cause, handwritten statements, medical records, and numerous other documents that do contain such information.

Likewise, Section 7.0 of the Policy also lists certain information which is required to be kept confidential, such as:

1. Social Security Numbers;
2. Financial Account Numbers;
3. Driver License Numbers;
4. State Identification (SID) Numbers;
5. Minors' names and dates of birth; and
6. Victim of abuse's address and other contact information.

The impetus and public policy for keeping all the information in specified in Section 7.0, as well as the other laws, confidential is obvious – this is sensitive information which could lead to identify theft, as well as invasions of privacy for minors and victims. Victims of certain crimes will stop reporting crimes if their personal information is published in newspapers, minors especially need to be protected, people who are exonerated of crimes will have their reputation tarnished

simply for being charged, and our courts have repeatedly held that medical and financial records are protected. *See* Fraternal Ord. of Police, Lodge No. 5 v. City of Philadelphia, 812 F.2d 105, 112–13 (3d Cir. 1987) (The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny.)

The list of reasons for protecting this information goes on and on. Pennsylvania's law balances the individuals privacy with the public's right to know. "The right to informational privacy is guaranteed by Article 1, Section 1 of the Pennsylvania Constitution, and may not be violated unless outweighed by a public interest favoring disclosure." Pennsylvania State Educ. Ass'n v. Commonwealth Dep't of Cmty. & Econ. Dev., 637 Pa. 337, 364, 148 A.3d 142, 158 (2016). In this case, the Clerk of the Court is tasked with maintaining that balance by adhering to the statutes and policies promulgated by the State. Plaintiff's Motion and their Complaint ignore these interests.

Plaintiffs also ignore the fact this law was only enacted in 2018. Prior to 2018, the same safeguards were not in place. Consequently, those older records were not filed in the same manner and currently protected information would likely be available in the case files. Moreover, the Defendant has discretion to insure that

such sensitive information does not go out to the public. As the Commentary to this section states, "With regard to Subsection E, a court or custodian is not required to review or redact documents filed by a party or attorney for compliance with this section. *However, such activities are not prohibited.*"

All of the foregoing is simply to demonstrate that the Defendant has a compelling interest in protecting the information which the law states is to be kept confidential. The Plaintiffs frequently request information which contains the protected information and therefore either the files cannot be given, or the protected information must be redacted or removed prior to giving out the files.

Additionally, as previously described, the Plaintiffs often request dozens of files at the same time. On March 24, 2022, the York Daily Record sent a request for all search warrants issued between January 1, 2022 and the present. The request was sent at 4:20 p.m. to an office that closes at 4:30. The staff was required to search records which resulted in determining there were 38 records. These then had to be checked to determine if there was any information that could not be provided to the public.

These are the types of requests that the Plaintiffs make. Section 5.0 of the Policy provides guidance on responding to requests. 5.0(A) states "A custodian

shall fulfill a request as promptly as possible *under the circumstances existing at the time of the request*." (emphasis added). The commentary to this section goes on to provide factors for delay such as "the request involves such voluminous amounts of information that the custodian is unable to fulfill the same without substantially impeding the orderly conduct of the custodians office" and "the requested information is restricted from access pursuant to applicable authority, or any combination of factors listed above." Again, these policies are set by the Commonwealth, and the Defendant is tasked with administering them.

The Plaintiff makes no attempt to argue that these laws limiting access do not protect vital rights themselves. Moreover, the First Amendment does not protect an absolute right to access court documents or court proceedings. *See* Press-Enterprise Co. v. Superior Ct. of Calif. for Riverside Cnty., 478 U.S. 1, 11-12 (1986). Specifically, the "right to inspect and copy judicial records is not absolute." Nixon v. Warner Commc'n, Inc., 435 U.S. 589, 598 (1978). The Supreme Court has held "every court has supervisory power over its own records and files." Id. Consequently, there is a "qualified" "right of public access". Press-Enterprise Co. at 10. The right of access is qualified, but the presumption of access may be overcome by an overriding interest based on findings that closure is

11

essential to preserve higher values and is narrowly tailored to serve that interest. Id. at 9. See Lanphere & Urbaniak v. Colo., 21 F.3d 1508, 1512 (10th Cir. 1994). Most importantly, as "The Supreme Court noted that, although there is an undoubted right to gather news from any source by means within the law, that right is limited, by its terms, to the ability to gather information from sources legally that are legally available to the public". Courthouse News Serv. v. New Mexico Admin. Off. of the Cts., No. CIV 21-0710 JB/LF, 2021 WL 4710644, at *34 (D.N.M. Oct. 8, 2021) (internal citations omitted). Plaintiffs cite Courthouse News Serv. for the proposition that courts have held that delays beyond five hours violate constitutional guarantees. (Plaintiff's Motion, p.20). But that case specifically deals with civil pleadings filed at the courthouse, not criminal ones, and is inapposite to the current matter.

      This matter is not simple, and the Plaintiffs' bald allegations and generalities do not paint the whole picture. Plaintiffs seek to force a drastic change to the status quo. "A party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly heavy burden in demonstrating its necessity." Lane v. New Jersey, 725 F. App'x 185, 187 (3d Cir. 2018). The Plaintiffs cannot meet that burden and, as a result, their motion should be denied.

### B. Plaintiffs Will Not Suffer Irreparable Harm

In addition to the foregoing, Plaintiffs' Motion should be denied for its failure to demonstrate irreparable harm. Plaintiffs Motion is accompanied by numerous affidavits describing individuals encounters with the Clerk of Court staff. However, these affidavits describe encounters which take place almost a year ago. Plaintiffs cannot complain of immediate and irreparable harm if they were willing to wait a year to file this action. "A party's delay in seeking a preliminary injunction could 'belie[ ] its claim of irreparable injury.' " E.O.H.C. v. Barr, 434 F. Supp. 3d 321, 340 (E.D. Pa. 2020), order vacated, appeal dismissed sub nom. E.O.H.C. v. Att'y Gen. United States, No. 20-1163, 2020 WL 2111302 (3d Cir. Apr. 20, 2020) *quoting* URL Pharma, Inc. v. Reckitt Benckiser Inc., No. CV 15-cv-505, 2016 WL 1592695, at *11 (E.D. Pa. Apr. 20, 2016). "This is because a delay in seeking enforcement of those rights...tends to indicate at least a reduced need for such drastic, speedy action." Id. quoting Lanin v. Borough of Tenafly, 515 F. App'x 114, 118 (3d Cir. 2013).

### C. The Public Interest

The Plaintiffs' only view of the public interest is when it aligns with their own wants. However, as described herein, these records contain sensitive and

13

private information which, if they were provided to the public, could cause damage in numerous and untold ways. The entire reasoning behind each of the policies and laws cited herein is for the public protection. Granting this injunction would undo all those protections and subject the people in those case files to irreparable harm.

## IV. CONCLUSION

For all the reasons set forth, the Plaintiff has failed to meet their burden to demonstrate the need for a preliminary injunction. This Honorable Court should therefore deny Plaintiffs' Motion.

Respectfully submitted,

By: /s/ Stephen R. McDonald
Stephen R. McDonald, Esquire
Attorney I.D. No. 310319
CGA Law Firm
135 N. George Street
York, PA  17401
717-848-4900 t.
717-843-9039 f.
smcdonald@cgalaw.com
Counsel for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YORK DAILY RECORD, THE : <br> YORK DISPATCH, THE : <br> PHILADELPHIA INQUIRER D/B/A: <br> SPOTLIGHT PA, LNP MEDIA : <br> GROUP, INC., and WITF : <br> Plaintiffs : <br> v. : <br> : <br> DANIEL J. BYRNES, in his official : <br> Capacity as Clerk of Court for : <br> York County, Pennsylvania : <br> Defendant : | Case No. 1:22-cv-00361-SHR <br><br><br><br><br><br><br><br> 42 U.S.C §1983 <br> PRELIMINARY AND <br> PERMANENT INJUNCTIVE <br> RELIEF REQUESTED |

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2022, a true and correct copy of the *Defendant's Response in Opposition Plaintiffs' Preliminary Injunction* was filed electronically through the Court's ECF system and served on Paula Knudsen Burke, Esquire and Sasha Dudding, Esquire via email.

By: /s/ Stephen R. McDonald
Stephen R. McDonald, Esquire
Attorney I.D. No. 310319
CGA Law Firm
135 N. George Street
York, PA 17401
717-848-4900 t.
smcdonald@cgalaw.com
Counsel for Defendant

15