IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YORK DAILY RECORD, | : | Case No. 1:22-cv-361-SHR |
| THE YORK DISPATCH, | : | (Hon. Sylvia H. Rambo) |
| THE PHILADELPHIA INQUIRER | : | |
| d/b/a SPOTLIGHT PA, | : | |
| LNP MEDIA GROUP, INC., and | : | |
| WITF, | : | *Electronically filed* |
|     Plaintiffs, | : | |
| | : | |
|        v. | : | |
| | : | |
| DANIEL J. BYRNES, in his official | : | |
| capacity as Clerk of Court for | : | |
| York County, Pennsylvania, | : | |
|     Defendant. | : | |


**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR A
<u>PRELIMINARY INJUNCTION</u>**

Paula Knudsen Burke
PA Attorney ID: 87607
Sasha Dudding**
REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
PO Box 1328
Lancaster, PA 17608
(717) 370-6884
pknudsen@rcfp.org
  ** Admitted *pro hac vice*;
     Bar ID Nos. DC 1735532, CT 441934
*Counsel for Plaintiffs*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES......................................................................... iii

PRELIMINARY STATEMENT ............................................................... 1

ARGUMENT ............................................................................................ 2

   I.   Plaintiffs Are Substantially Likely to Establish that Defendant's
Practices and Policies Violate Their Constitutional Right to Access
Judicial Records. ............................................................................. 3

      A.  The UJS Policy does not excuse Defendant's impermissible
delays and denials of access to judicial records. .................................. 7

      B.  The Clean Slate Act does not excuse Defendant's impermissible
delays and denials of access to judicial records. ................................. 10

      C.  A selected provision within the Judicial Code, 42 Pa. C.S.
§ 5988, does not excuse Defendant's impermissible delays and
denials of access to judicial records. ................................................... 14

   II.  The Remaining Factors Favor the Entry of a Preliminary Injunction........ 17

CONCLUSION ................................................................................... 20

CERTIFICATE OF WORD COUNT COMPLIANCE ......................................... 22

CERTIFICATE OF SERVICE............................................................................ 23

# TABLE OF AUTHORITIES

**Cases**

*Am. C.L. Union v. Ashcroft*,
    322 F.3d 240 (3d Cir. 2003).................................................................. 18

*Associated Press v. U.S. District Court*,
    705 F.2d 1143 (9th Cir. 1983)............................................................... 4

*Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist.*,
    386 F.3d 514 (3d Cir. 2004)............................................................. 2, 17

*Commonwealth v. Contakos*,
    453 A.2d 578 (Pa. 1982) ....................................................................... 3

*Commonwealth v. Lynn*,
    192 A.3d 194 (2018) ............................................................................ 15

*Commonwealth v. Moser*,
    999 A.2d 602 (Pa. Super. Ct. 2010) .................................................... 10

*Commonwealth v. Starr*,
    301 A.2d 592, 594 (Pa. 1973) ............................................................. 10

*Courthouse News Serv. v. Cozine*,
    No. 21-CV-680 (YY), 2022 WL 593603 (D. Or. Feb. 14, 2022),
    *report and recommendation adopted*, 2022 WL 1000775 (Apr. 4, 2022).......... 19

*Courthouse News Serv. v. Gabel*,
    No. 21-CV-132 (CR), 2021 WL 5416650 (D. Vt. Nov. 19, 2021) .................. 4, 9

*Courthouse News Serv. v. Jackson*,
    No. 09-CV-1844 (MH), 2009 WL 2163609 (S.D. Tex. July 20, 2009).......... 4, 17

*Courthouse News Serv. v. N.M. Admin. Off. of Cts.*,
    No. 21-CV-710 (JB), 2021 WL 4710644 (D.N.M. Oct. 8, 2021)............... *passim*

*Courthouse News Serv. v. Planet*,
    947 F.3d 581 (9th Cir. 2020).................................................................. 5

*Courthouse News Serv. v. Schaefer*,
    2 F.4th 318 (4th Cir. 2021) ................................................................... 4

*Courthouse News Serv. v. Tingling*,
    No. 16-CV-8742 (ER), 2016 WL 8739010 (S.D.N.Y. Dec. 16, 2016)............. 4, 7

*Cox Broad. Corp. v. Cohn,*
   420 U.S. 469 (1975) ............................................................................. 4

*Dunmore Sch. Dist. v. Pa. Interscholastic Athletic Ass'n,*
   505 F. Supp. 3d 447 (M.D. Pa. 2020) ................................................. 2

*Elrod v. Burns,*
   427 U.S. 347 (1976) ....................................................................... 3, 17

*Globe Newspaper Co. v. Superior Court,*
   457 U.S. 596 (1982) ....................................................................... 3, 19

*Grove Fresh Distribs., Inc. v. Everfresh Juice Co.,*
   24 F.3d 893 (7th Cir. 1994) ............................................................... 15

*Lanin v. Borough of Tenafly,*
   515 F. App'x 114 (3d Cir. 2013) ....................................................... 18

*Miller v. Cnty. of Centre,*
   173 A.3d 1162 (Pa. 2017) ................................................................... 3

*Press-Enter. Co. v. Superior Court,*
   478 U.S. 1 (1986) .................................................................. 1, 3, 7, 16

*Project Vote v. Kelly,*
   805 F. Supp. 2d 152 (W.D. Pa. 2011) ............................................... 16

*Providence J. Co. v. Rodgers,*
   711 A.2d 1131 (R.I. 1998) ................................................................ 16

*Ramsey v. City of Pittsburgh,*
   764 F. Supp. 2d 728 (W.D. Pa. 2011) ............................................... 19

*Stilp v. Contino,*
   613 F.3d 405 (3d Cir. 2010) ............................................................... 3

*Swartzwelder v. McNeilly,*
   297 F.3d 228 (3d Cir. 2002) ............................................................. 17

*Temple Univ. v. White,*
   941 F.2d 201 (3d Cir. 1991) ............................................................. 20

*United States v. Antar,*
   38 F.3d 1348 (3d Cir. 1994) ........................................................... 1, 7

*United States v. Thomas,*
   905 F.3d 276 (3d Cir. 2018) ............................................................... 1

*United States v. Wecht*,
    537 F.3d 222 (3d Cir. 2008)............................................................... 1, 4, 5, 15

**Statutes**

18 Pa. C.S. § 9122.2 ................................................................... 10, 11, 12

18 Pa. C.S. § 9122.1 ....................................................................... 10, 11

42 Pa. C.S. 5988 .......................................................................... 14, 15, 16

42 U.S.C. § 1983 ..................................................................................... 3

**Constitutional Provisions**

Pa. Const. art. I, § 11 ........................................................................... 1, 3

**Other Authorities**

47 Pa. Bull. 291 (Jan. 21, 2017),
    http://www.pacodeandbulletin.gov/Display/pabull?file=/secure/pabulletin/
    data/vol47/47-3/95.html ................................................................. 8

Brandon Addeo, *'He Needs to Be Separated From Society': Domestic
    Abuser Sentenced to 40 Years in Prison*, York Dispatch (Sept. 15, 2021),
    https://perma.cc/E8JR-Y7K7 ........................................................ 12

*Ineligible Convictions and Eligible Exclusions*, Unified Jud. Sys. of Pa.,
    https://www.pacourts.us/learn/learn-about-the-judicial-system/clean-slate-
    expungement-and-limited-access/ineligible-convictions-and-eligible-
    exclusions......................................................................................... 11

*The Path to Clean Slate*, AOPC (May 15, 2019),
    https://www.pacourts.us/Storage/media/pdfs/20210224/160611-
    thepathtocleanslate-007847.pdf ....................................................... 11

Plaintiffs the York Daily Record, The York Dispatch, The Philadelphia Inquirer d/b/a Spotlight PA, LNP Media Group, Inc., and WITF (collectively, "Plaintiffs") submit this reply in further support of their motion for a preliminary injunction.

## PRELIMINARY STATEMENT

It is beyond dispute that the right of the press and public to contemporaneously access judicial records is protected by the First Amendment and the Pennsylvania Constitution. *See* Pa. Const. art. I, § 11; *United States v. Wecht*, 537 F.3d 222, 229 (3d Cir. 2008); *Commonwealth v. Fenstermaker*, 530 A.2d 414, 418 (Pa. 1987). Plaintiffs depend on that right to fulfill their role of reporting on court proceedings, informing readers in York County about their government, courts, police, and community. When, as here, state actors restrict that right of timely access, they bear the burden of showing that their policies are narrowly tailored to advance a compelling state interest. *See, e.g.*, *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 13–14 (1986); *United States v. Antar*, 38 F.3d 1348, 1358–59 (3d Cir. 1994). Defendant Daniel J. Byrnes has failed to meet this burden. The policies and practices he has adopted in his official capacity as York County Clerk of Courts unconstitutionally infringe on Plaintiffs' access rights and irreparably harm their newsgathering work. Defendant's citations to assorted state laws and policies on confidentiality do not justify his access restrictions, and

1

instead evidence a core misunderstanding of both constitutional access rights and the cited provisions.  Moreover, contrary to Defendant's contentions, Plaintiffs do not seek instant access to all information in York County judicial records.  Rather, Plaintiffs seek what the U.S. and Pennsylvania Constitutions guarantee: access to judicial records that is neither improperly delayed nor denied by unlawful policies.  To ensure this access, Plaintiffs move this Court for a preliminary injunction requiring Defendant to provide access to judicial records maintained by his office as promptly as possible under the circumstances, but not to exceed one business day, to no longer redact non-confidential information from judicial records, and to cease "impounding" judicial records without a court order.

## ARGUMENT

This Court's entry of a preliminary injunction is warranted because Plaintiffs have demonstrated (1) a substantial likelihood of success on the merits; (2) that they will suffer irreparable harm if the injunction is denied; (3) that granting a preliminary injunction will not cause greater harm to Defendant; and (4) that an injunction is in the public interest.  *See Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004); *Dunmore Sch. Dist. v. Pa. Interscholastic Athletic Ass'n*, 505 F. Supp. 3d 447, 456 (M.D. Pa. 2020). Because Plaintiffs claim Defendant is violating their First Amendment rights, and "injunctive relief [is] 'clearly appropriate'" in such cases, the first factor is most

salient.  *Stilp v. Contino*, 613 F.3d 405, 409 & n.4 (3d Cir. 2010) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

I.  **Plaintiffs Are Substantially Likely to Establish that Defendant's Practices and Policies Violate Their Constitutional Right to Access Judicial Records.**

Plaintiffs are substantially likely to prevail on their claims that Defendant's policies and practices of pervasively redacting non-confidential information from judicial records, "impounding" judicial records, and otherwise delaying or denying access to judicial records violate Plaintiffs' constitutional access rights.  *See* 42 U.S.C. § 1983; Compl. ¶¶ 68–99.[1]  The First Amendment and the Pennsylvania Constitution guarantee the press and public a presumptive right of access to criminal court proceedings and judicial records associated with those proceedings. *See* Pa. Const. art. I, § 11 ("All courts shall be open[.]"); *Press-Enter. Co.*, 478 U.S. at 13; *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 602–03 (1982); *Miller v. Cnty. of Centre*, 173 A.3d 1162, 1167 (Pa. 2017).  Reporters depend on that access to transmit information to the public, which "serves to guarantee the

---

[1]     In his response brief, Defendant does not dispute that he is a person acting under color of law within the meaning of § 1983, that Plaintiffs' claims arise out of policies and practices he enacted in his official capacity as Clerk of Courts, and that he must show his access-restricting policies and practices are "'essential to preserve higher values and [are] narrowly tailored to serve that interest.'"  *See* Defendant's Response in Opposition to Plaintiffs' Motion for a Preliminary Injunction ("Def.'s Br.") at 11–12 (quoting *Press-Enter. Co.*, 478 U.S. at 9). Instead, Defendant contends that his policies and practices meet strict scrutiny.  As discussed below, they do not.

fairness of trials and to bring to bear the beneficial effects of public scrutiny upon

the administration of justice." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492

(1975).  The First Amendment right of access is a right of **contemporaneous**

access, which courts interpret to mean one business day or less, absent

extraordinary circumstances.  *See, e.g.*, *Courthouse News Serv. v. Schaefer*, 2 F.4th

318, 328 (4th Cir. 2021); *Wecht*, 537 F.3d at 229; *Associated Press v. U.S. District

Court*, 705 F.2d 1143, 1147 (9th Cir. 1983); *Courthouse News Serv. v. N.M.

Admin. Off. of Cts.*, No. 21-CV-710 (JB), 2021 WL 4710644, at *1 (D.N.M. Oct. 8,

2021); *Courthouse News Serv. v. Jackson*, No. 09-CV-1844 (MH), 2009 WL

2163609, at *4 (S.D. Tex. July 20, 2009).[2]  Otherwise, "the value of the right of

---

[2]     Defendant argues that Courthouse News Service cases are inapposite
because they involve claims seeking timely access to newly filed civil complaints,
rather than judicial records filed in criminal cases.  Def.'s Br. at 12.  The
constitutional presumption of access, however, attaches to both.  Access to
criminal case records, moreover, is particularly important, as "[p]ublic scrutiny of
a criminal trial enhances the quality and safeguards the integrity of the factfinding
process," "fosters an appearance of fairness," and "permits the public to participate
in and serve as a check upon the judicial process."  *Globe Newspaper Co.*, 457
U.S. at 606.  And, the access restrictions Plaintiffs face are particularly
problematic, causing not only delays like those faced by Courthouse News Service,
but also improper redactions and access denials.  As courts adjudicating
Courthouse News Service's claims have held, a policy causing unwarranted access
delays is not narrowly tailored and warrants injunctive relief to prevent the
ongoing violation of constitutional rights.  *See, e.g.*, *Courthouse News Serv. v.
Gabel*, No. 21-CV-132 (CR), 2021 WL 5416650, at *18 (D. Vt. Nov. 19, 2021);
*N.M. Admin. Off. of Cts.*, 2021 WL 4710644, at *40; *Courthouse News Serv. v.
Tingling*, No. 16-CV-8742 (ER), 2016 WL 8739010 (S.D.N.Y. Dec. 16, 2016);
*Jackson*, 2009 WL 2163609, at *4.

access would be seriously undermined." *Wecht*, 537 F.3d at 229. "'[T]hat "old" news is not worthy of, and does not receive, much public attention has been widely recognized . . . [and] the need for immediacy of reporting news "is even more vital in the digital age," where timeliness is measured in terms of minutes or seconds."' *Gabel*, 2021 WL 5416650, at *17 (quoting *Courthouse News Serv. v. Planet*, 947 F.3d 581, 594 (9th Cir. 2020)). When state court clerks enact policies denying the right of contemporaneous access, including policies that require staff to review judicial records for confidential information before providing access, they must show these policies are narrowly tailored to meet a compelling government interest. *Id.* at *13. If, instead, their policy of "pre-access review thwarts these objectives in an inconsistent, unpredictable, and unjustifiable manner," it is unconstitutional and injunctive relief is warranted. *Id*. at *16.

In this case—as Plaintiffs have documented across numerous declarations— Defendant's policy of requiring staff to manually review requested judicial records before providing access infringes on Plaintiffs' constitutional rights by causing improper delays, redactions, and denials of access. *See* Compl. ¶¶ 31–99 & Exs. F–O (ECF Nos. 1, 1-7–1-16); Pls.' Mem. of Law in Supp. of Mot. for Prelim. Inj. ("Pls.' Mem.") & Exs. A–D (ECF Nos. 5, 5-1–5-4). Rather than fulfilling his role as the state official elected to facilitate access to judicial records, Defendant has undertaken a role obstructing access. For example, access to 36 of 42 records

5

Plaintiffs requested from Defendant's office between September 7 and 30, 2021 was delayed beyond one business day or denied, and nearly all were redacted. Compl. ¶¶ 4, 43. Defendant's office consistently redacts non-confidential information from judicial records, such as Facebook's office location, car models, motel names, adult victim and non-party names, and unsealed charges visible on public dockets. *See* Decl. of Dylan Segelbaum, Compl. Ex. J, ¶¶ 32–38 (ECF No. 1-11); Decl. of Aimee Ambrose, Compl. Ex. L, ¶¶ 9, 21 (ECF No. 1-13); Decl. of Brandon Addeo, Compl. Ex. F, ¶¶ 3–5 (ECF No. 1-7); Decl. of Rachel McDevitt, Compl. Ex. M, ¶¶ 3–10 (ECF No. 1-14); Decl. of Hurubie Meko, Compl. Ex. K, ¶¶ 6–16 (ECF No. 1-12). Defendant's office also improperly denies access entirely, including by baselessly "impounding" entire case files. *See* Meko Decl. ¶¶ 6–8, 13–15, 17–20; Segelbaum Decl. ¶¶ 42–45. These improper access restrictions continue to date, harming Plaintiffs' ability to timely report truthful and newsworthy information to the public. *See, e.g.*, Ambrose Decl. ¶¶ 2–3, 15; Meko Decl. ¶ 22; Segelbaum Decl. ¶¶ 2–3, 22–29, 40.

Defendant attempts to justify his policy and its consequences by citing assorted Pennsylvania statutes and policies governing the confidentiality of certain information in judicial records. In doing so, he reveals a fundamental misunderstanding of these provisions, his office's role, and, most critically, constitutional access rights. Before examining each cited provision, however, it is

6

essential to note that they do not, and cannot, absolve Defendant of his obligation to provide constitutionally adequate, timely access to judicial records maintained by his office.  Defendant must apply state laws consistently with constitutional access guarantees, instead of citing them as a basis for impermissible delays and denials.  He must show that any resulting policies and practices which restrict Plaintiffs' access rights satisfy strict scrutiny.  *See Press-Enter. Co.*, 478 U.S. at 13–14; *Antar*, 38 F.3d at 1358–59; *Fenstermaker*, 530 A.2d at 418.  Instead, Defendant has "failed to meet [his] burden of demonstrating that [his] policy of refusing to provide the public and press access to" judicial records "until after they are reviewed . . . is either essential to preserve higher values or is narrowly tailored to serve that interest."  *Tingling*, 2016 WL 8739010.  Accordingly, Plaintiffs are substantially likely to succeed on the merits of their claims.

### A. The UJS Policy does not excuse Defendant's impermissible delays and denials of access to judicial records.

First, Defendant contends that his policies and the ensuing delays, redactions, and access denials are required by the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania (the "UJS Policy").  *See* UJS Policy, https://www.pacourts.us/Storage/ media/pdfs/20211230/165101-publicrecordspolicy2022.pdf (last accessed Apr. 2022).  Not so.  The UJS Policy aims to facilitate, not obstruct, public access to judicial records in Pennsylvania's civil and criminal courts.  *See* UJS Policy §§

7

1.0–3.0.  It was written to align with federal and state constitutional access

guarantees.  *See* 47 Pa. Bull. 291 (Jan. 21, 2017),

http://www.pacodeandbulletin.gov/Display/pabull?file=/secure/pabulletin/data/vol

47/47-3/95.html.  Its access restrictions are narrow, covering six categories of

confidential information, such as Social Security Numbers, and, *inter alia*, records

sealed by court order or made confidential by statute.  UJS Policy §§ 7.0, 9.0.

Procedurally, parties and attorneys are solely responsible for ensuring that court

filings comply with the UJS Policy, and they may include confidential information

only in a Confidential Information Form filed with the court.  *Id.* § 7.0.  Any

noncompliance is addressed by the court, not records custodians, and "shall not

affect access."  *Id.* § 7.0(E)–(F).  Records custodians such as Defendant may not

create more restrictive access policies or "artificial administrative barriers" to

access.  *Id.* § 1.0(D), Commentary to § 4.0.  Custodians "shall fulfill a request for

access to case records as promptly as possible," and provide specific reasons for

any delays or denials.  *Id.* § 5.0.

Under the UJS policy, and consistent with constitutional access guarantees,

Defendant's office must promptly respond to access requests, not delay,

improperly redact, or deny access to presumptively public judicial records.

Defendant's "unjustifiably lengthy bureaucratic process" is not narrowly tailored to

maintain confidentiality or serve compelling state interests.  *N.M. Admin. Off. of*

8

*Cts.*, 2021 WL 4710644, at \*40.  As the UJS Policy commands, parties and attorneys will have already excluded confidential information from their filings, with any errors correctable by the court.  UJS Policy § 7.0.  If records were initially filed with a Magisterial District Court, they will already have been governed by the UJS Policy.  *Id.* § 1.0(D).  If a court has issued a sealing order, it will already be in effect.  All that remains is for a Clerk's office employee, or a computer system, to pull up the requested record and, if no court sealing order is in effect, provide access.

Indeed, for years, Defendant's office was governed by the UJS Policy and provided instant, no-cost access to judicial records on public computer terminals at the York County courthouse without inserting Clerk's office staff into the process. Compl. ¶¶ 31–32, 36.  Defendant does not claim his office was noncompliant with the UJS Policy during that time, or "that they experienced significant confidentiality breaches prior to the implementation of pre-access review."  *Gabel*, 2021 WL 5416650, at \*15–16 (holding state courts' policy of pre-access review "cannot withstand constitutional scrutiny").  Instead, as his reason for removing the terminals and implementing the current, delay-ridden manual review system, Defendant points to the UJS Policy's bar on public access to information "otherwise restricted by . . . state law."  Def.'s Br. at 5–7 (citing UJS Policy § 9.0(F)).  In particular, Defendant cites Pennsylvania's Clean Slate Act, which took

9

effect in 2019.  *Id.* (citing 18 Pa. C.S. §§ 9122.1–9122.2).  Yet as explained below, neither the UJS Policy nor Clean Slate Act justifies Defendant's practices and policies that obstruct timely access to judicial records.

### B. The Clean Slate Act does not excuse Defendant's impermissible delays and denials of access to judicial records.

A look at the plain text of the Clean Slate Act ("the Act") makes abundantly clear that this legislation does not validate the delays, redactions, and denials Defendant's office imposes, nor can it constitutionally be read to do so.  Under the Act, certain criminal history record information is automatically shielded from public access.  18 Pa. C.S. § 9122.2(a).  The eligible offenses are (1) certain misdemeanor convictions if the defendant has, for 10 years, been free from conviction of offenses punishable by over one year in prison and has paid all court-ordered restitution; (2) charges resulting in a final disposition other than conviction; (3) summary convictions over 10 years old if the defendant has paid all court-ordered restitution; and (4) convictions for which the defendant was pardoned.  *Id.*  Other categories of information, however, are categorically ineligible for limited access.  This includes information pertaining to felony convictions and charges that have not reached a final disposition.  *Id.*[3]

---

[3]    Guilty pleas and pleas of *nolo contendere* constitute convictions under the Act.  *See, e.g.*, *Commonwealth v. Starr*, 301 A.2d 592, 594 (Pa. 1973); *Commonwealth v. Moser*, 999 A.2d 602, 606 (Pa. Super. Ct. 2010).  Additionally, certain individuals whose records are not subject to automatic limited access may

Procedurally, each month, the Administrative Office of Pennsylvania Courts ("AOPC") sends the Pennsylvania State Police a record of eligible convictions. *Id.* § 9122.2(b). The State Police has 30 days to check the list and direct the AOPC to remove any ineligible records. *Id.* Next, upon receipt of the approved list, each Court of Common Pleas issues a monthly order limiting access to eligible records in that jurisdiction. *Id.* Docket entries reflecting this order are recorded in the affected cases, public dockets are automatically updated to omit sealed offenses, and a notation is added in the courts' back-end software, called CPCMS. *See The Path to Clean Slate*, AOPC (May 15, 2019),

https://www.pacourts.us/Storage/media/pdfs/20210224/160611-thepathtocleanslate-007847.pdf.

Defendant's claim that "the only way to" comply with the Act "is to review files which are requested prior to turning them over," Def.'s Br. at 6–7, causing lengthy delays and improper redactions and denials, is baseless. It reflects a core misunderstanding of both the Act and constitutional access rights. Like the UJS

---

petition the court for limited access, provided they have, for 10 years, been free from conviction of offenses punishable by over one year in prison and have paid all court-ordered restitution. 18 Pa. C.S. § 9122.1. Again, convictions on many types of offenses do not qualify. *See id.*; *Ineligible Convictions and Eligible Exclusions*, Unified Jud. Sys. of Pa., https://www.pacourts.us/learn/learn-about-the-judicial-system/clean-slate-expungement-and-limited-access/ineligible-convictions-and-eligible-exclusions (last accessed Apr. 2022).

Policy, the plain text of the Act creates no role for Clerks of Courts; rather, it establishes an automated process implemented by other state actors.

Constitutionally, any role the Clerk does undertake cannot obstruct timely access to public judicial records. *See supra* Part I. Yet obstruction is exactly what Plaintiffs experience. For example, Plaintiffs often request judicial records in cases where the charges have not reached final disposition and are thus categorically ineligible for limited access. 18 Pa. C.S. § 9122.2(a); *see, e.g.*, Ambrose Decl. ¶¶ 4–9; Decl. of Scott Fisher, Compl. Ex. N, ¶ 9 (ECF No. 1-15); Decl. of Dan Nephin, Compl. Ex. O, ¶ 3 (ECF No. 1-16); Decl. of Jack Panyard, Compl. Ex. I, ¶ 3 (ECF No. 1-10); Segelbaum Decl. ¶¶ 19, 42–43, 46–47. Additionally, Plaintiffs often request records related to felony convictions and under-10-year-old misdemeanor or summary offense convictions, which are likewise ineligible for limited access. 18 Pa. C.S. § 9122.2(a); *see, e.g.*, Addeo Decl. ¶ 3; Ambrose Decl. ¶ 21; Decl. of Teresa Boeckel, Compl. Ex. G, ¶ 3 (ECF No. 1-8); Decl. of Colin Deppen, Pls.' Mem. Ex. C, ¶ 2 (ECF No. 5-3); Fisher Decl. ¶ 3; Meko Decl. ¶¶ 9–12, 16; Panyard Decl. ¶¶ 12–17; Segelbaum Decl. ¶¶ 22–30, 38. Naturally, newer cases and those involving felonies are often more newsworthy. *See, e.g.*, Ambrose Decl. Ex. B; Segelbaum Decl. Ex. A; Brandon Addeo, *'He Needs to Be Separated From Society': Domestic Abuser Sentenced to 40 Years in Prison*, York Dispatch (Sept. 15, 2021), https://perma.cc/E8JR-Y7K7.

12

When Plaintiffs request access to judicial records in these cases, Clerk's office staff can quickly confirm from the docket whether the records have been marked for limited access by the court.  Yet instead of promptly making this confirmation and providing access, staff frequently spend days reviewing and redacting the records, with no basis in the Act or any other authority.  *See* Compl. ¶¶ 37–99.  The Act does not authorize the sort of piecemeal redactions Defendant's office imposes.  A charge is either subject to limited access or not; no black marker hiding certain names or locations is called for.  But that is exactly what Defendant's staff do, redacting non-confidential information from records that have not been identified for Clean Slate limited access including office and motel locations, car models, and adult non-party names.  *See* Segelbaum Decl. ¶¶ 32–38, 47; Ambrose Decl. ¶¶ 9, 21.  They also deny access to entire charges that are not subject to limited access and are visible on public dockets.  *See* Meko Decl. ¶¶ 6–12, 16, 20–21.

In sum, the Clean Slate Act grants Defendant's office no authority to unilaterally delay or improperly restrict access to public judicial records. Defendant has, however, enacted policies and practices that do just that, causing delays, redactions, and denials of access going far beyond the Act's scope.  He has failed to meet his burden to demonstrate that these policies and practices are narrowly tailored to serve a compelling state interest, instead asking the Court to

13

blindly accept that they are.  *See* Def.'s Br. at 4–12.  Accordingly, these practices

cannot withstand constitutional scrutiny.

### C. A selected provision within the Judicial Code, 42 Pa. C.S. § 5988, does not excuse Defendant's impermissible delays and denials of access to judicial records.

Next in the grab-bag of state laws Defendant cites to defend his policy of

improper access delays, redactions, and denials is a provision within the Judicial

Code: 42 Pa. C.S. § 5988.  It provides that "in a prosecution involving a minor

victim of sexual or physical abuse, the name of the minor victim shall not be

disclosed by officers or employees of the court to the public, and any records

revealing the name of the minor victim shall not be open to public inspection."  42

Pa. C.S. § 5988(a).  This statute aligns with the UJS Policy, which directs parties

and attorneys to exclude from public filings "[m]inors' names and dates of birth

except when a minor is charged as a defendant in a criminal matter."  UJS Policy

§ 7.0(A)(5).

Defendant has implemented an unconstitutionally broad interpretation of

§ 5988, using it to "impound" all cases involving minor abuse victims—a term that

appears nowhere in the statute or Defendant's responsive briefing.  *See* Def.'s Br.;

Compl. ¶¶ 47–51; 42 Pa. C.S. § 5988.  Once Defendant "impounds" a case, his

office denies all requests for access to records in that case, even scheduling orders.

*See* Meko Decl. ¶¶ 6–8, 13–15, 17–20; Segelbaum Decl. ¶¶ 42–45.  According to

14

his staff, Defendant enacted this policy based on conversations with his solicitor, who "agrees that some of the language is slightly ambiguous" but, "to protect the victims," "advised we err on the side of not providing the records to the public and that anyone who seeks access can petition the court."  Meko Decl. ¶ 19.

This policy turns the constitutional right of access on its head.  Judicial records filed in criminal cases are presumed public, access restrictions must meet strict scrutiny, and "[a]ny doubts must be resolved in favor of disclosure."  *Grove Fresh Distribs., Inc. v. Everfresh Juice Co*., 24 F.3d 893, 897 (7th Cir. 1994); *accord Wecht*, 537 F.3d at 233 (describing presumption of access).  Here, Defendant has turned his doubts about § 5988 into a blanket sealing policy.  This is neither narrowly tailored nor consistent with state law.  Instead, Clerks must promptly provide access to any record that does not name the minor victim, provided no court sealing order or other restriction applies.  Importantly, under the UJS Policy, judicial records must already exclude minors' names before filing.  UJS Policy § 7.0(A)(5).  If any filings are noncompliant, again, it is the court's task to address—not by wholesale sealing, but by ordering the parties to promptly bring specific records into compliance.  *Id.* § 7.0(E)–(F); *see, e.g.*, *Commonwealth v. Lynn*, 192 A.3d 194, 197 n.3 (Pa. Super. Ct. 2018) ("We therefore order counsel to file within seven days of this decision a substituted brief redacting D.G.'s full name.").  Courts in states with similar statutes likewise understand that the First

15

Amendment requires construing them as limiting access to minor victims' names, not to all records in cases involving minor victims.  *See, e.g.*, *Providence J. Co. v. Rodgers*, 711 A.2d 1131, 1132–37 (R.I. 1998).  This is the only way to properly "balance the protection of the identity of child victims of sexual assault with safeguarding the public's interest in the fairness of criminal prosecutions." *Id.* at 1137; *see also Project Vote v. Kelly*, 805 F. Supp. 2d 152, 168 (W.D. Pa. 2011) ("Federal courts generally construe state statutes to avoid constitutional difficulties whenever it is reasonably possible to do so.").  Defendant's own divergent preference about how to strike that balance may not replace the Constitution's presumption of openness or its strict prerequisites for closure.  Nor has Defendant established that "impounding" every record in every case with a minor assault victim "is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co.*, 478 U.S. at 9 (citation omitted).  Accordingly, § 5988 does not, and may not be read to, validate Defendant's policy of "impounding" all records in cases with minor assault victims.

*     *     *

In sum, neither the state policies and statutes Defendant cites, nor any others, can release Defendant from his constitutional obligation to provide the press and public with timely access to judicial records maintained by his office.  Plaintiffs have demonstrated their substantial likelihood of success on the merits, warranting

16

a preliminary injunction to halt Defendant's continuing violations of their

constitutional rights.

## II.    The Remaining Factors Favor the Entry of a Preliminary Injunction.

Plaintiffs likewise satisfy the remaining three factors of the preliminary

injunction analysis.  Plaintiffs will suffer irreparable harm without a preliminary

injunction, granting the injunction will not cause greater harm to Defendant, and

the injunction is in the public interest.  *See Child Evangelism Fellowship of N.J.*

*Inc.*, 386 F.3d at 524.

Where, as here, movants allege First Amendment violations, irreparable

harm is presumed because "'[t]he loss of First Amendment freedoms, for even

minimal periods of time, unquestionably constitutes irreparable injury.'"

*Swartzwelder v. McNeilly*, 297 F.3d 228, 241 (3d Cir. 2002) (quoting *Elrod*, 427

U.S. at 373).  Each day that Plaintiffs' constitutional access rights are infringed

irreparably harms their ability to timely report on newsworthy information about

York County court proceedings.  *See, e.g.*, Ambrose Decl. ¶¶ 2–3, 15; Meko Decl.

¶ 22; Segelbaum Decl. ¶¶ 2–3, 22–29, 40; *cf. N.M. Admin. Off. of Cts.*, 2021 WL

4710644, at *43 (finding irreparable harm to media plaintiff facing access

restrictions); *Jackson*, 2009 WL 2163609, at *4 (same).  Although Defendant

faults Plaintiffs for providing examples of harm going back to mid-2021, these

declarations establish that the harms Plaintiffs face are consistent, ongoing, and

cannot be remedied absent this Court's intervention.[4]  Def.'s Br. at 13.  Plaintiffs'

declarations also describe improper access denials occurring shortly before they

filed suit.  *See* Ambrose Decl. ¶ 21; Meko Decl. ¶ 4; Segelbaum Decl. ¶ 47.  And,

Defendant's own brief shows he will continue to uphold the policies and practices

causing these impermissible access restrictions.  *See* Def.'s Br. at 3–12.  As such,

Plaintiffs' harm is irreparable and immediate, necessitating injunctive relief.

Next, Plaintiffs have shown that granting the preliminary injunction would

not result in greater harm to Defendant.  As an elected official tasked with

facilitating public access to judicial records, Defendant "does not have 'an interest

in the enforcement of an unconstitutional law'" or custom infringing on access

rights.  *Am. C.L. Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003) (citation

omitted).  Further, Defendant's policy of having staff manually review requested

records before providing access unnecessarily burdens his office.  Plaintiffs do not,

as Defendant contends, seek "a drastic change to the status quo."  Def.'s Br. at 12.

In fact, one solution would be to reimplement the system in place until last year,

---

[4]      In the case Defendant cites for the proposition that Plaintiffs' motion was
delayed, movants waited 25 months to file suit and seek a preliminary injunction,
unlike here.  Def.'s Br. at 13 (citing *Lanin v. Borough of Tenafly*, 515 F. App'x
114, 118 (3d Cir. 2013)); *cf. N.M. Admin. Off. of Cts.*, 2021 WL 4710644, at *5
(access system against which plaintiff obtained preliminary injunction began three
years prior); Complaint ¶ 26, *Tingling*, No. 16-CV-8742 (ER) (S.D.N.Y. filed Nov.
10, 2016) (same).  Moreover, Plaintiffs moved for a preliminary injunction within
days of filing suit.

18

permitting contemporaneous access on public computer terminals.  Overall,

Plaintiffs simply request that Defendant promptly respond to access requests

instead of directing his staff to spend days reading and taking a black marker to

each requested document, in violation of their constitutional access rights.  *Cf.*

*Courthouse News Serv. v. Cozine*, No. 21-CV-680 (YY), 2022 WL 593603, at *8

(D. Or. Feb. 14, 2022), *report and recommendation adopted*, 2022 WL 1000775

(Apr. 4, 2022) (noting that "defendant mischaracterizes plaintiff's prayer for relief"

where injunction would not prescribe specific access procedure, but "simply asks

that defendant be barred from using practices that unconstitutionally infringe upon

the qualified First Amendment right of access").

Finally, Plaintiffs' requested preliminary injunction is overwhelmingly in the

public interest.  "[C]ourts considering requests for preliminary injunctions have

consistently recognized the significant public interest in upholding First

Amendment principles."  *Ramsey v. City of Pittsburgh*, 764 F. Supp. 2d 728, 735

(W.D. Pa. 2011) (collecting cases).  Constitutional access rights protect the fairness

of criminal trials and "serve[] to ensure that the individual citizen can effectively

participate in and contribute to our republican system of self-government."  *Globe*

*Newspaper Co.*, 457 U.S. at 604.  An injunction would benefit the public by

upholding this constitutional right, enabling Plaintiffs to timely report on criminal

proceedings and individuals to easily obtain public judicial records.  Although

Defendant opines that altering his access policies will intrude on the privacy of victims and defendants, an existing framework of state laws already protects that privacy without necessitating or justifying the pre-access review of requested judicial records. *See supra* Part I.  Defendant might prefer a different legal framework, but that preference cannot supplant the U.S. and Pennsylvania Constitutions' access guarantees.  Plaintiffs do not ask Defendant to ignore statutes governing the confidentiality of certain information in judicial records; rather, they ask that he not use those statutes to fuel a policy of impermissible, across-the-board delays and denials of access.

Because all four factors of the analysis favor the entry of a preliminary injunction, Plaintiffs respectfully request that this Court grant their motion.[5]

## CONCLUSION

For the foregoing reasons, and those set forth in their moving papers, Plaintiffs respectfully move this Court for a preliminary injunction requiring Defendant Daniel J. Byrnes, in his official capacity as York County Clerk of Courts, to provide access to judicial records maintained by his office as promptly as possible under the circumstances, but not to exceed one business day, to stop

---

[5]    Plaintiffs also reiterate their request that this Court waive any injunction bond or require only a nominal bond, as is proper when seeking a preliminary injunction to vindicate constitutional rights.  *See Temple Univ. v. White*, 941 F.2d 201, 220 (3d Cir. 1991); *N.M. Admin. Off. of Cts.*, 2021 WL 4710644, at *44 (waiving bond).  Defendant has not opposed this request.  *See generally* Def.'s Br.

redacting non-confidential information from judicial records, and to cease

"impounding" the judicial records of entire cases before the York County Court of

Common Pleas.

Dated: April 12, 2022

Respectfully submitted,

By /s/ Paula Knudsen Burke
Paula Knudsen Burke
Sasha Dudding**
REPORTERS COMMITTEE FOR
    FREEDOM OF THE PRESS
PO Box 1328
Lancaster, PA 17608
(717) 370-6884
pknudsen@rcfp.org
    ** Admitted *pro hac vice*;
        Bar ID Nos. DC 1735532, CT 441934
    *Counsel for Plaintiffs*

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Paula Knudsen Burke, Esq., certify that the foregoing brief complies with the word-count limit of Local Rule 7.8(b)(2) and contains 4,996 words.  In making this count, I have relied upon the word count feature of Microsoft Word, which was used to prepare this brief.

By /s/ Paula Knudsen Burke
Paula Knudsen Burke
Sasha Dudding**
REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
PO Box 1328
Lancaster, PA 17608
(717) 370-6884
pknudsen@rcfp.org
   ** Admitted *pro hac vice*;
      Bar ID Nos. DC 1735532, CT 441934
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2022, I electronically filed this reply

memorandum on PACER, where it is accessible by all parties and their counsel,

and served it on Stephen R. McDonald and Sean E. Summers, counsel for

Defendant Daniel J. Byrnes, via email.


By /s/ Paula Knudsen Burke
Paula Knudsen Burke
Sasha Dudding**
REPORTERS COMMITTEE FOR
    FREEDOM OF THE PRESS
PO Box 1328
Lancaster, PA 17608
(717) 370-6884
pknudsen@rcfp.org
    ** Admitted *pro hac vice*;
        Bar ID Nos. DC 1735532, CT 441934
    *Counsel for Plaintiffs*

23